Carlos **RAMIREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69749.

Court of Criminal Appeals of Texas, En Banc.

June 19, 1991.

Rehearing Denied Sept. 18, 1991.

Jane Wynegar (court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Kathlyn Giannaula and Alan Curry, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder. V.T.C.A. Penal Code, sec. 19.03(a)(2). The trial judge assessed appellant's punishment at death by lethal injection after the jury returned affirmative answers to the special issues submitted pursuant to Art. 37.071(b)(1) and (2).[1] Appellant presents twenty-eight points of error in this direct appeal. We will reverse the judgment of the trial court and address those points of error which may arise in the event of a retrial.

Appellant does not challenge the sufficiency of the evidence to support his conviction or to support the jury's affirmative answers to the issues at punishment. Appellant does challenge, however, the admissibility of certain evidence at guilt/innocence. A somewhat detailed recitation of the facts is necessary to facilitate our discussion of those points of error.

Appellant was charged with committing the murder of Beverly Strothers in the course of burglarizing her home. The indictment specifically alleged in pertinent part that appellant:

> while in the course of committing and attempting to commit burglary of a habitation owned by BEVERLY SUE STROTHERS, intentionally cause (sic) the death of BEVERLY SUE STROTHERS, ..., by cutting and stabbing [her] with a knife.

Appellant and a friend, Steve Hernandez, who was also charged in connection with this offense, went to visit Jacquie Picasso at approximately 3:00 a.m. on September 14, 1985. Jacquie's mother, Leci Gillette, told appellant and Hernandez that Jacquie was out with her friend Candis Cain.[2] The two men then left, and Gillette watched them walk in the direction of Candy's apartment, but she did not see whether they entered it. Approximately fifteen or thirty minutes later, Gillette heard screams, which she recognized as her daughter Jacquie's and Candy's voices, coming from Candy's home.

Candy testified she and Jacquie entered her home through the back entrance. Candy noticed both the patio gate and the sliding glass door to her room were open which was unusual. Once inside the apartment, Candy noticed her mother's room

---

1. The trial judge also submitted to the jury a special issue on appellant's use of a deadly weapon, which the jury also answered affirmatively.

2. Hernandez and appellant told Gillette they needed to talk to Jacquie to see if she had any information on a girl named Lisa who had runaway and whose parents were waiting outside in the car for them. This story was completely false.

was "messed up" and then she saw her mother's legs protruding from the bathroom into the hallway. Candy described her mother as naked, very bloody, and still alive when she found her in the bathroom. Candy asked her mother what happened; her mother told her "They raped me" and she mumbled something else before dying in Candy's arms. Candy's little brother, Jim Bob Strothers, was asleep on one of the couches in the front room and was not awakened during the assault on his mother. Both Candy's TV and her mother's TV were missing from the apartment.

Appellant did not testify at trial. His confession, which was edited and read to the jury, stated in pertinent part:

Steve said let's go to Candy's house and get the TV's (sic). We walked around to Candy's apartment and went to the back patio. Steven opened the sliding door and we went in. The bedroom light was on but no one was in the room. We started looking around in the bedroom for jewelry. We did not find any thing so decided to take the TV. We were in the living room trying to take the TV. Candy's mother was laying down on the couch sleeping. Candy's little brother was laying on the small couch. I guess we were making too much noise, and she started moving around and sat up. She saw us and started yelling. We both told her to shut up. She yelled y'all are Candy's friends, ain't you. We grabbed and drug her into the hall between the bathroom and the kitchen. As we were dragging her her gown came off. She started fighting with us. We told her to be quiet and stay still. Steve said, 'Hey, man, she knows us, we'll have to kill her.' I told Steve no but he kept hollering that we had to kill her. Steve got a knife from the kitchen and came in and stabbed her somewhere in the chest while I was holding her. She then laid still. I went into the kitchen and got a big knife from one of the drawers. I went back and stabbed her about three times in the left chest. Steve was holding her around the mouth. She was still alive. We both cut her throat. I put the knife I had in the closet with the towels

... After we finished stabbing her, I grabbed the small TV which came out of one of the bedrooms, and Steve grabbed the big TV which was in the living room ... I didn't mean to kill her, we just went over there to steal the T.V., but when she woke up she recogniezed (sic) us. Things just happened ...

The assistant medical examiner testified Strothers, the deceased, had a cluster of five stab wounds to the left side of her neck and another such cluster to the left side of her chest. In addition to these ten stab wounds, Strothers had superficial cuts and abrasions, defensive wounds on her right hand, an abrasion of her vagina, and a contusion between her vagina and anus. Strothers died as a result of three of the stab wounds to her chest.

Houston police department chemist Christie Kim testified she performed serological analyses on the hair, skin, and bodily fluids samples from appellant, Hernandez, and the victim. Kim testified she found spermatozoa in the deceased's mouth which indicated to her the deceased had had oral sex prior to her death, but there was an insufficient seminal stain present to detect the type of donor's seminal fluid. No sperm were detected on the vaginal and oral smears taken from the victim. Kim stated seminal stains were also present on the briefs appellant was wearing when he was arrested later that morning of the offense, but no such stains were found on Steve Hernandez's clothing. Kim's testimony coincided with that of the assistant medical examiner that the contusions in the victim's vaginal and anal orifices were consistent with an assault to the genital area but were not made by the male sex organ. The assistant medical examiner stated the contusions and abrasions could have been caused by fingers or a blunt object.

In his first point of error, appellant contends the trial court committed reversible error by allowing Candy, the victim's daughter, to testify her mother told her she had been raped. Appellant argues this testimony introduced evidence of an extraneous offense which was not admissible because "rape" was not alleged in the indict-

ment and the State relied upon his intent to steal, as evidenced by his confession, to prove its case.

During trial the trial judge conducted a hearing outside the jury's presence on the admissibility of Candy's testimony that her mother said "They raped me" prior to dying. Appellant objected to admission of the statement arguing the State could not prove beyond a reasonable doubt the extraneous offense occurred, that there is no such thing as extraneous offense by party, and given the confession the State had overwhelming evidence upon which to convict appellant.[3] Appellant also stated for the record, after the trial judge ruled the statement was admissible, that the prejudicial value of the statement greatly outweighed its probative value and that it was not admissible under *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). Appellant renewed his objections to this testimony when the State offered it in the jury's presence. Given the state of this record, we cannot conclude, for reasons to be given, Candy's statement impermissibly interjected evidence of an extraneous offense.

■ As we noted *infra*, the indictment in this case charged appellant with murder in the course of burglary of a habitation. Under V.T.C.A. Penal Code sec. 30.02(a) a person commits burglary "if, without the effective consent of the owner, he (1) enters a habitation ... with intent to commit a felony or theft; or (3) enters a ... habitation and commits or attempts to commit a felony or theft." The indictment did not specifically allege which burglarious intent appellant had when he committed this offense, nor was the State required to plead the constituent elements of the offense constituting the aggravating feature of capital murder. *Marquez v. State*, 725 S.W.2d 217, 236 (Tex.Cr.App.1987). In order for the State to meet its burden of proof as to the allegation of burglary in the indictment the State had to show beyond a reasonable doubt appellant entered the Strothers' apartment with either the intent

to commit a felony, e.g. sexual assault, or with the intent to commit theft, the taking of the television sets. The indictment was not specific as to which theory the State intended to prove to support its capital murder allegation. Any evidence tending to show either burglarious intent on the part of appellant was admissible proof of the State's case. See *Barefoot v. State*, 596 S.W.2d 875, 887 (Tex.Cr.App.1980), cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981), (other evidence of motive did not preclude admission of evidence of extraneous offense establishing another motive for killing victim of capital murder).

■ Appellant's argument that the sexual assault is an extraneous offense because it is not alleged in the indictment is without merit. As we just noted, the evidence of the sexual assault is part of the State's proof on the aggravating feature of this capital murder, and the State was not required to plead the offense or attempted offense which indicated burglarious intent. Evidence of sexual assault goes directly to that material issue in this case. Evidence of appellant's intent may be gleaned from his actions. See and cf. *McGee v. State*, 774 S.W.2d 229 (Tex.Cr.App.1989) (actions of accused indicate intent to steal where aggravating offense in capital murder prosecution was robbery). In other words, the sexual assault was a part of the criminal transaction and not an extraneous event which may only put the transaction in its proper context. See *Albrecht*, 486 S.W.2d at 100 (discussion of res gestae exception for admissibility of extraneous offenses).

■ Appellant argues the State's evidence in this case, as evidenced by his confession, was that he entered the apartment to take televisions, not to rape. While it is true appellant's confession evinces an intent to commit theft upon entering the deceased's home, that same confession, along with other evidence at trial, tends to rebut that very same theory and support the theory that appellant's intent

---

**3.** Appellant also objected to the statement on hearsay grounds. The State responded the statement was admissible as an excited utter-
ance. The trial judge overruled this objection, too. Appellant does not contest this ruling on appeal.

was to commit a sexual assault. For example, appellant's confession indicates Steve suggested they "get the T.V.s" from Candy's house, but then appellant stated that they decided to steal a television after they could not find any jewelry in the bedroom. Appellant's statement also indicates the victim's nightgown "came off" when they were dragging her down the hall. A policeman testified, however, that the deceased's nightgown *and panties* were found between the couch and the coffee table in the living room where the deceased had been sleeping. The jury was to decide whether appellant had the requisite burglarious intent before it could convict appellant of capital murder. The confession certainly presents evidence appellant intended to commit theft but, at the same time, that evidence does not prevent the State from presenting other relevant evidence on a felonious intent. Compare *Barefoot,* 596 S.W.2d 875 (evidence of one motive did not prevent admission of extraneous offense showing another motive for killing).

■ The evidence at trial indicated appellant entered the deceased's apartment with a felonious intent. The State was entitled to present this evidence to support its allegation in the indictment that this murder was committed during the course of a burglary. Circumstances of the offense which tend to prove the allegations in the indictment are not extraneous offenses. Therefore, we hold the trial judge did not err in admitting Candy's testimony that her mother said she was raped as this evidence went to a material element of the State's case and was not an extraneous offense. Appellant's first point of error is overruled.

In his second point of error, appellant contends reversible error occurred when the chemist for the Houston police department was permitted to speculate as to why there were so few sperm cells in the mouth of the deceased. Appellant argues this testimony prejudiced the minds of jurors, but he fails to present any authorities to support his contention. The State argues appellant failed to receive an adverse ruling on his trial objection and has therefore waived error. We agree with the State's argument.

As noted *infra* chemist Christie Kim testified the deceased had sperm in her mouth, which indicated to her the deceased had had oral sex sometime prior to her death, but there was an insufficient amount present to type the seminal fluid. The prosecutor asked Kim if she knew of any reason why there would be so few sperm in the deceased's mouth. Appellant's counsel objected the testimony "would be very highly speculative unless she knows from her own personal knowledge." The trial judge responded "If she knows[ ]" to the objection. Kim thereafter answered the question and other related questions without any further objection from appellant's counsel.

■ To preserve error for review a defendant must receive an adverse ruling on his objection. *Darty v. State,* 709 S.W.2d 652 (Tex.Cr.App.1986). The ruling must be conclusory; that is, it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived. *Bailey v. State,* 532 S.W.2d 316, 322 (Tex.Cr.App.1975). We perceive the trial judge's "ruling" in this instance as an instruction to the witness to answer the prosecutor's question if she had personal knowledge of the answer; whereupon the witness answered the question without protest. There was no definite or even adverse ruling on appellant's objection, therefore error is waived. Point of error number two is overruled.

In point of error number five, appellant again presents us with an issue involving the sexual assault evidence. Appellant contends the trial judge erred by not giving his requested instruction in the jury charge at guilt/innocence that the jury disregard any evidence of sexual assault unless they believe beyond a reasonable doubt appellant committed the offense, or, if the jury considered it at all, they do so only on the issue of intent. The basis of appellant's argument is that the sexual assault was an extraneous offense and therefore the trial judge was required to give the jury a limiting instruction.

No limiting instruction was required in this cause because the evidence of sexual assault did not present an extraneous offense to the jury nor was the evidence admitted for any limited purpose. See and cf. *Wilkerson v. State*, 736 S.W.2d 656, 661 (Tex.Cr.App.1987) (limiting instruction on an extraneous offense not required where extraneous offense is part of transaction which includes offense on trial); *Ernster v. State*, 165 Tex.Crim. 422, 308 S.W.2d 33 (1957) (trial court reversibly erred in failing to give instruction limiting jury's consideration of extraneous offense to purpose for which admitted). Moreover, the jury charge at guilt/innocence did not limit the issue of burglarious intent to appellant's intent to commit *theft* as stated in his confession. The jury charge defined the aggravating offense as "a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit *any felony.*" (emphasis supplied).[4] The charge did not specify sexual assault or theft as the felony nor did it set out in the definitional section what type offenses constitute felonies. Since there was no extraneous offense evidence introduced and the evidence of sexual assault was not admitted for a limited purpose, a limiting instruction as to this evidence would have been improper. Appellant's fifth point of error is overruled.

In two related points of error, three and four, appellant contends reversible error occurred when the trial court refused on two different occasions during trial to instruct the jury to disregard all evidence about a rape and failed to grant a mistrial. Since we determined in point of error number one that evidence of a sexual assault was not evidence of an extraneous offense but was evidence of the offense for which appellant was being tried and went to the issue of burglarious intent, consider-

ation by the jury of this evidence is proper. The fact that the evidence of sexual assault is not conclusive goes to its weight and not its admissibility. The trial judge did not err by failing to give the requested instructions. We overrule these two points of error without further discussion.

In appellant's sixth point of error he contends reversible error occurred when his statement was admitted into evidence because it contained evidence of an extraneous transaction. When appellant's statement was offered into evidence defense counsel objected to the inclusion of the sentence "Steve and me decided to go get a car" as evidence of an extraneous offense, namely car theft. The prosecutor offered to "white it out", but the trial judge overruled defense counsel's objection and the statement was admitted into evidence. The State responds there was no error in admitting this portion of the statement because it does not indicate criminal conduct since the act of "getting" the car could include innocent behavior. This interpretation is not realistic especially since the State utilizes the same language of "getting the T.V.s" as evidence of appellant's intent to commit theft. We agree with appellant that the statement indicates an extraneous offense, so now we turn to this issue of its admissibility.

In *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972) this Court stated, *inter alia*, that the admissibility of extraneous offenses, which are generally inadmissible, must be determined on the facts of each case.[5] One factual scenario favoring admissibility of an extraneous offense is where the extraneous transaction shows the context in which the criminal act occurred, i.e., the res gestae. See *Mann v. State*, 718 S.W.2d 741 (Tex.Cr.App.1986); *Rogers v. State*, 774 S.W.2d 247 (Tex.Cr.

---

4. Appellant did not request a jury instruction defining "felony" for the jury. Appellant requested, however, and the trial judge denied, a jury instruction on the lesser included offense of burglary of a habitation and specified "intent to commit theft" as the burglarious intent.

5. The State obviously does not advance any argument as to why this extraneous transaction is admissible since it contends the statement did not introduce an extraneous offense to the jury. We perceive the res gestae exception as the only plausible argument for admissibility of the complained of statement in the confession and therefore address this point within that context.

App.1989). This context includes events or circumstances which are not clearly distinguishable from a continuing transaction of which the charged offense is a part. *Rogers,* 774 S.W.2d at 257. Thus, we must determine whether appellant's and Steve's conduct of "getting a car" was so closely interwoven with the facts of the capital murder as to be evidence of the res gestae of the offense.

Appellant's statement indicates he and Steve decided "to go get a car" in the early morning hours the day of the offense.[6] They got the car started and then, according to the confession, decided to go to Candy's house, but they parked near Jacquie's house and went there first. After speaking to Jacquie's mother, the two finally went to Candy's house where they committed this brutal murder, the details of which are set out *infra.*

Although we have given only a cursory review here of the facts, we believe it is clear the act of stealing a car had no connection to this capital murder offense except to provide transportation for appellant and Steve to and from the general vicinity of the crime. We decline to elevate that evidence to "context of the offense" evidence, which would favor its admissibility, because we find the act of stealing the car is irrelevant to any material issue in this cause. Arguably the car facilitated appellant's flight from this offense, but we are addressing the extraneous nature of appellant's act of stealing the car prior to commission of this offense and whether that act is a circumstance which is not clearly distinguishable from the charged offense and thus aids the jury in its realistic evaluation of the evidence. See *Albrecht,* 486 S.W.2d at 100. We hold the extraneous offense of stealing the car was not so interwoven with the charged capital murder as to be res gestae of the offense, and the trial judge erred in allowing the statement regarding this extraneous transaction into evidence via the confession. Since this cause will be remanded for a new trial in light of our disposition of appellant's twenty-eighth point of error, we do not engage in a harmless error analysis at this time but rather only note that Tex.R.App.Proc. 81(b)(2) is applicable.

■ In his seventh point of error appellant contends his confession was admitted into evidence in violation of the Fifth Amendment to the United States Constitution and Arts. 38.22 and 38.23, V.A.C.C.P., because he was not given proper "Miranda warnings."[7] Appellant argues the proper warnings were not given because he was told "*I* have the right to remain silent" instead of "*you* have the right ..."

Prior to trial on the merits, the trial judge held a hearing on the admissibility of any statements made by appellant.[8] At the conclusion of the hearing the trial judge ruled appellant's statement was admissible, and in response to that ruling, appellant's trial counsel objected that there "was sufficient evidence raised at the hearing to show that the statement was not intelligently, knowingly and voluntarily made inasmuch as no one told the defendant what he could possibly be charged with." When the statement was offered into evidence at trial appellant objected "on the same basis that we had at prior hearings as to admissibility of this particular statement." Although there were numerous questions at the hearing on whether appellant was warned "I" instead of "you", appellant fails to direct us to any place in the record where he lodged this objection to the admissibility of the statement. Since appellant's objection at trial fails to comport with error he raises in this appeal, nothing is preserved for review. *Gardner v. State,*

---

6. Appellant's confession actually states they decided to get the car sometime "past midnight [of September 13, 1985]". The alleged offense was committed at approximately 3:00 a.m. on September 14, 1985.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. Appellant filed a "Motion to Suppress Written Statement" alleging, *inter alia,* his statement was involuntary, coerced, and enticed from him, he was deprived his right to counsel and did not waive that right, and his statement was tainted by his illegal arrest and detention. Nowhere in the motion does appellant contend he was improperly warned.

733 S.W.2d 195 (Tex.Cr.App.1987). Consequently, the seventh point of error is overruled.

■■■ In his eighth point of error appellant argues reversible error occurred when his statement was admitted into evidence because he was warned the statement could be used "for or against him". Appellant claims his right against self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution and Arts. 38.22 and 38.23 has been abridged. Appellant asserts he preserved this error for review by objecting to the admission of his statement during the pretrial hearing and at trial and by requesting an instruction on the voluntariness of the confession that the jury disregard it if they believed the police told appellant the statement could be used for him and that was an inducement to make him sign the confession.[9] The State again asserts appellant has failed to preserve error for review.

At the hearing on the admissibility of appellant's confession, defense counsel questioned Houston police department personnel and tried to ascertain whether appellant was told his statement could be used "for or against him" as opposed to just "against him". While questioning Sergeant John Swaim, defense counsel made a bill of exception and established that, in Swaim's opinion, a defendant's statement could be used for or against him at trial. Swaim then stated he only told appellant his statement could be "[u]sed as evidence against me in court", and appellant concluded his bill. As pointed out in the seventh point of error, appellant's objections to the admissibility of the statement were based only on the ground it was not volun-

tarily given because he was not told the offense with which he could be charged. Having not raised the objection that he was improperly warned of his rights against self-incrimination in his motion to suppress, at the motion hearing, or at trial, appellant waives this point of error. See *Gauldin v. State*, 683 S.W.2d 411, 413 (Tex.Cr.App. 1984); and *Gardner*, 733 S.W.2d at 203. The eighth point of error is overruled.

Appellant contends in his ninth point of error that seven photographs of the deceased were improperly admitted at trial over his objection. The issue of admissibility of State's Exhibits 34–39, and 41 was addressed outside the jury's presence. Appellant objected to their admission on the basis that the pictures were "so gross and horrible that they could do nothing but incense the jury and prejudice them against the defendant." Appellant also offered to stipulate that Beverly Sue Strothers was the victim and that she died from cutting and stabbing as alleged in the indictment. Appellant then further objected that the photographs were cumulative and their prejudicial value far exceeded their probative value, especially since the State introduced other photographs which established the nature of the wounds and the identity of the victim. The trial judge admitted the pictures into evidence over the objections.

■■■ Appellant contends in his brief that pictures of a corpse are not subject to "wholesale admission" in evidence in criminal trials, and he cites *Goss v. State*, 549 S.W.2d 404 (Tex.Cr.App.1978), and *Whaley v. State*, 367 S.W.2d 703 (Tex.Cr.App.1963), as examples of restrictions on admissibility.[10] We have no quarrel with this contention. The admissibility of a photograph is

---

9. A request for a specific jury instruction will preserve error as to the jury charge, Art. 36.15, V.A.C.C.P., but not as to the admissibility of evidence during trial. Without a timely and specific objection to the admission of the evidence during trial, any error in admitting the evidence is waived. *Armstrong v. State*, 718 S.W.2d 686 (Tex.Cr.App.1985).

10. In *Goss*, 549 S.W.2d at 406, this Court stated the admissibility of a photograph depends on its identification as an accurate portrayal of relevant facts by a person with knowledge that the photograph is a correct representation of those

facts. In *Goss*, the admission into evidence of autopsy photographs was reversible error because the medical examiner who testified had not performed the autopsy or even viewed the body of the deceased but merely stated the pictures were consistent with the autopsy report, which made no mention that photographs were taken during the autopsy. In *Whaley*, 367 S.W.2d at 704, the Court merely stated the pictures did not solve any issue in the case and were highly inflammatory and, therefore, should not have been admitted into evidence.

within the sound discretion of the trial judge, who determines whether the exhibit serves a proper purpose in the enlightenment of the jury. *Burdine v. State*, 719 S.W.2d 309 (Tex.Cr.App.1986). Generally, this Court has held photographs admissible if verbal testimony as to matters depicted in the photographs is also admissible. *Id.; Rogers v. State*, 774 S.W.2d 247 (Tex.Cr. App.1989). An abuse of discretion arises only when the probative value of the photograph is small and its inflammatory potential great. *Burdine*, 719 S.W.2d at 316.

The photographs in issue here depicted the deceased's body from the side and in relation to one of the alleged murder weapons found on the floor, her upper torso and face, and the wounds on her neck and body. Charles Williams of the Houston police department, who participated in the crime scene investigation, testified the photographs were accurate depictions of the deceased's body as found at the crime scene the morning of the alleged offense. Testimony describing the wounds the victim received and the general condition of the body at the time it was discovered by police is admissible evidence; thus, pictures portraying the same are also admissible unless their probative value is outweighed by any prejudicial effect. *Adams v. State*, 685 S.W.2d 661, 668 (Tex.Cr.App.1985). See now Tex.R.Crim.Evid. 403. The photographs are probative of the manner of the deceased's death and also of appellant's culpable mental state since he stated in his confession he did not mean to kill the victim. We hold the trial judge did not err in admitting the photographs into evidence. See *Burdine*, 719 S.W.2d at 317. Appellant's ninth point of error is overruled.

Appellant presents us with seven points of error dealing with alleged trial error during the punishment phase. In point of error number ten, appellant contends the trial judge reversibly erred when she sustained the State's objection to his final argument. Appellant complains of two separate instances during his jury argument when the trial judge sustained the State's objection. Appellant contends he was twice prohibited from arguing to the jury relevant mitigating evidence at punishment. From our review of the entire punishment proceedings, we perceive no error, much less reversible error, on the part of the trial judge in sustaining the State's objections.

During the punishment phase, appellant presented testimony from a sister and a half-sister that he was one of eleven children in his family. The family apparently depended primarily on food stamps for their meals each month but occasionally received financial contributions from appellant's father who rarely visited. Both women testified that the family often had only bread, butter, and mayonnaise to eat at the end of each month when the food stamps were depleted. Additionally, appellant's sister and a former police officer both testified to incidents when appellant was a juvenile and had been sniffing paint. Dominga Vela, appellant's sister, observed appellant when he was nine or ten years old acting "real happy" and looking "[l]ike he was high on something." She noticed he had a little bit of gold paint with him. Rodney Blassingame, former police chief of Rosebud and now a Baptist minister, testified appellant attempted to shoot him in the face in January 1979 after pursuing him through a field. When Blassingame arrested appellant, he noticed appellant had a can of spray paint in the sweatshirt he was wearing. Blassingame stated he had never seen anyone "high" on spray paint.

The two complained of objections came within the same context during appellant's jury argument. The following occurred:

> [Mr. McDonald]: Sometimes I don't think that it is clear when we talk about some of these acts. I want to show and explain to you what we attempted to present to you, and I only do this in a way to demonstrate it to you so you will understand what I think I'm talking about. We presented the evidence and Carlos came from a very bad background. I know and I recognize that that is no excuse in and of itself. Many of you on the jury told us that you brought yourself up in a very bad economic background. Each

individual is different. Those without mental capacity have an extremely hard time, ladies and gentlemen. I think it's so obvious that they have a very bad time of it. That may be why we have so many of them that are sentenced in these cases. But what I want to do and the only reason I didn't bring the family here for sympathy, I wanted you to know the background which he came from because later on I get to argue about the death penalty in general and I think that has a great deal of influence on it. Look at the background. They were poor, they were on welfare.

Mr. Davis (Prosecutor): Object to this as being outside the evidence.

Mr. McDonald: I'm entitled to demonstrate what was testified.

The Court: Sustain the State's objection.

Mr. McDonald: I'm not allowed to do that?

The Court: No.

Mr. McDonald: I'm not allowed to show—well, obviously I have a problem but I want to remind you, mayonnaise on bread. Have you ever eaten mayonnaise and bread? That was the substance of life, that was the nourishment that you got, mayonnaise and bread. Very unhappy childhood. The father's never there. It occurs way too often in this country, ladies and gentlemen. And that's what happened. All too often these individuals turn to just what we were talking about, drugs. Sniffing paint. Can you imagine spraying paint into a baggie or a Coke can—

Mr. Davis: Object to this as also being outside of the evidence. There's been no evidence at all.

Mr. McDonald: Sniffing paint? Certainly there was evidence to sniffing paint.

The Court: Approach the bench. (Whereupon there was a discussion at the bench.)

Mr. McDonald: I'm informed that I'm not allowed to tell you how sniffing paint is done, and I'll have to leave that up to you.

Mr. Davis: Object to the side-bar remark of Mr. McDonald.

The Court: Sustained.

Appellant's counsel then continued his argument addressing the spray paint problem and summarizing the evidence.

We have recited the argument and objections to facilitate our discussion of this point of error because we feel that isolating only the last sentence of appellant's argument and the accompanying objections takes the point of error out of context. Clearly, appellant was not prevented from arguing the evidence of appellant's bad childhood, economic background, and paint sniffing problem, as he alleges in his brief. The trial judge, by sustaining the State's objection, prevented appellant's trial counsel from *demonstrating* the mayonnaise and bread and how to sniff paint.[11] Although there was testimony from members of appellant's family that they were so poor they had only bread and mayonnaise to eat at times, there was no demonstrative evidence in conjunction with this testimony. Appellant fails to clearly indicate in the record what attempted demonstration regarding the mayonnaise and bread he was prevented from doing. Thus, no error regarding this argument is presented. *Dean v. State*, 481 S.W.2d 903 (Tex.Cr.App.1972). Also, the State is correct that there is no evidence in the record describing how a person inhales spray paint to get intoxicated. We conclude the trial judge did not err in sustaining the State's objections. Point of error number ten is overruled.

◼ In point of error number eleven, appellant contends the State violated the court's pre-trial discovery order, and thus

---

**11.** Appellant's trial counsel renewed his objections to the trial court's rulings during argument after the jury retired for deliberations. Counsel stated for the record that he was not allowed to show the jury the spray paint can and the mayonnaise and bread, but the State was allowed a demonstration during argument. The only demonstration by the State which we could find in the record is the State used a board to write out the two special issues under Art. 37.071(b) for the jury.

reversible error occurred. Appellant filed a motion for discovery requesting, *inter alia,* production of his prior criminal record for "inspection and/or copying." At a pretrial hearing on appellant's motion, the State and appellant "agreed" to this request and there was no other ruling or discussion of that specific issue at the hearing.

During the punishment phase of trial and outside the jury's presence, in anticipation of the State's next proffer of evidence, appellant's counsel stated for the record he had not received copies of the judgments, sentences, or jail records for appellant in cause number 398297, a felony theft conviction, and cause number 366668, a misdemeanor theft conviction. Counsel argued the State had failed to comply with the discovery order and asked that the evidence of these two prior convictions be excluded, but he admitted he knew of the existence of these prior convictions.[12] The trial judge held a hearing, and it was determined the prosecutor had subpoenaed the records the week prior to this trial but because of the county clerk's recording procedures the subpoena list had not been in the clerk's file for appellant to review. The prosecutor stated he had seen "some of the records" earlier in the week, but he did not receive the jail cards on appellant "until just now." The prosecutor acknowledged he had not yet supplied appellant's trial counsel with any of the records. The trial judge overruled appellant's objection to the admissibility of the records which thereafter were admitted into evidence through the testimony of several witnesses.

Appellant contends he was harmed because the two convictions went into evidence without his prior review and he "might have wanted to stipulate to these records if he had had the opportunity to first review them." First of all, we note

the State would not be required to accept appellant's stipulation nor would it be restricted from introducing into evidence appellant's jail records or the facts underlying the prior convictions merely because appellant was willing to admit to commission of these prior offenses. See *e.g. Gentry v. State,* 770 S.W.2d 780, 793 (Tex.Cr. App.1988); *Wilkerson v. State,* 736 S.W.2d 656 (Tex.Cr.App.1987) (State's right to introduce evidence not restricted by defendant's admission of facts sought to be proved); and Art. 37.071, V.A.C.C.P. Secondly, we perceive of no harm to appellant in this cause. There is no allegation of surprise at trial or in appellant's brief, nor could appellant credibly allege any. Prior to the State calling any witnesses, appellant's trial counsel stated he anticipated the proffer by the State of two prior convictions of appellant's, and he stated the cause number of each case. His objection for the record was not based on notice grounds but was that he had not yet received copies of the judgments and sentences in those cases. His request that the records not be admitted was denied [13], yet he did not move for a continuance or even a short recess to review the jail and court records which the prosecutor had just received. Accordingly, we overrule appellant's eleventh point of error. See *Guerra v. State,* 771 S.W.2d 453 (Tex.Cr.App.1988).

In point of error number twelve, appellant complains of the prosecutor's cross-examination of a psychologist who testified for the defense at punishment. Doctor Robert Sarmiento testified he reviewed a psychological evaluation report on appellant back in February, 1979, but he had never personally interviewed or tested appellant. At the time of this review, Sarmiento was working with the juvenile probation department and was retained to consult with that staff on cases of suspected mental retardation. From his evaluation,

---

12. Appellant's trial counsel had in fact filed a motion for new trial for appellant in cause number 398297 after his probation had been revoked.

13. The appropriate remedy for the willful withholding of evidence from disclosure under a discovery order is the exclusion of that evidence

from admission at trial. *Hollowell v. State,* 571 S.W.2d 179 (Tex.Cr.App.1978). We find the record in this cause does not support a conclusion that the prosecutor willfully withheld this evidence, and, in fact, defense counsel stated for the record he was not alleging misconduct.

Sarmiento concluded appellant had an I.Q. of 57, which indicated he was mentally deficient as to intelligence. On cross-examination, the prosecutor, utilizing facts in evidence, asked Sarmiento a hypothetical question on a person's propensity for violence. Sarmiento agreed the hypothetical question encompassed past violent conduct, but he was hesitant to predict future behavior without further facts about the person and qualification by reference to research findings which indicate these predictions are sometimes not very accurate. The prosecutor then asked:

> Doctor, are you aware of studies which have shown that violent offenders, repeat offenders are responsible for the great majority of the violent crimes in this country?
>
> [Defense Counsel]: Object. Assuming facts not in evidence.
>
> [Prosecutor]: I'm asking him if he's aware during the course of his study.
>
> The Court: Let him answer the question.
>
> [Witness]: I'm not aware of studies to that nature specifically, no.
>
> [Prosecutor]: Are you aware of a Rand Corporation study in that regard?
>
> [Witness]: No, not specifically.

Appellant submits the prosecutor exceeded the bounds for cross-examination provided for by the Rules of Criminal Evidence because these questions were not "ordinarily leading questions but instead admitted facts not in evidence." Appellant cites no authorities for his argument except Tex. R.Crim.Evid. 610(b) and (c) and 705.

■ First, we hold error has been properly preserved for review as to this point of error. The trial judge's ruling implicitly overruled appellant's objection since it was an unqualified directive that the question be answered. Thus the ruling is adverse to appellant, and error is preserved.[14] We now address the merits of appellant's contention.

The applicable evidence rules[15] provide in pertinent part:

**Rule 610. Mode and Order of Interrogation and Presentation**

(b) Scope of Cross–Examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.

(c) Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

**Rule 703. Bases Of Opinion Testimony By Experts**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**Rule 705. Disclosure Of Facts Or Data Underlying Expert Opinion**

(a) Disclosure of Facts or Data. The expert may testify in terms of opinion or inference and give his reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, ...

■ An expert witness may give his opinion based upon sufficient relevant facts provided those facts are within his personal knowledge, assumed from common or judicial knowledge, or established by the evidence. *Holloway v. State,* 613 S.W.2d 497 (Tex.Cr.App.1981); *Pyles v. State,* 755 S.W.2d 98 (Tex.Cr.App.1988). Psychiatric

---

**14.** Cf. the trial court's ruling in and subsequent disposition of point of error number two. See also Tex.R.App.Pro. 52(a).

**15.** The Rules of Criminal Evidence became effective September 1, 1986. Appellant's trial on the merits began on December 8, 1986. Thus, these rules were applicable to appellant's trial and control disposition of this point of error.

expert opinion testimony as to a defendant's future dangerousness, Art. 37.-071(b)(2), V.A.C.C.P., may be given upon these bases. *Pyles*, 755 S.W.2d at 118; *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr. App.1980), cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). As Rule 703 indicates, the facts or data forming the basis of the expert's opinion "need not be admissible in evidence"; thus, an expert's opinion could be predicated solely on inadmissible hearsay if of a type reasonably relied upon by experts in that field of expertise. S. Goode, G. Wellborn, and M. Sharlot, *33 Texas Practice Guide to the Texas Rules of Evidence: Civil and Criminal* Sec. 703.3 (1988). This rule recognizes that experts rely not only on the facts given them during trial to form their opinions and draw inferences but also on their experience and training. *Id.* Under Rule 705 an expert is required to disclose the facts or data underlying his opinion only upon direction of the court or cross-examination. Disclosing this information enables the jury to evaluate the expert's opinion and ascertain the weight it wishes to attach to such testimony.

Moreover, Rule 705 allows an expert witness to express his opinion without disclosing the underlying facts or data upon which it is based. As we just noted, however, the expert may be required to disclose this information upon cross-examination. While cross-examining a witness in an attempt to discern what information the witness relied upon in forming his opinion, the inquiring party may either ask an open-ended question as to what studies, facts, or data form the basis of the opinion or ask about specific studies by name. Under Rule 705 it would be improper for the inquiring party to disclose the results of certain studies, by asking a leading question, when it has not been established that the specific study was actually done or that the expert relied upon the study in forming his opinion. Disclosing the results of the study under the guise of identifying the study would admit before the jury facts not

yet introduced into evidence, which result is not contemplated by Rule 705. We hold, therefore, that the prosecutor's questions directly revealing the results of "unknown" studies, and inferentially revealing the results of the "Rand" study, were improper under Rule 705.

Distinct from Rule 705 is Rule 610 which, along with prior caselaw, allows leading questions during cross-examination which attack the credibility of a witness. Pursuant to Rule 610 and caselaw, an expert witness may be impeached by an opposing party's use of generally inadmissible hearsay evidence, such as a book, report, or other publication. This material is admissible to demonstrate any deficiency in the expert's knowledge and to help the jury determine the weight to be given the testimony. See *Aliff v. State*, 627 S.W.2d 166, 170 (Tex.Cr.App.1982).[16] Before the material may be used for impeachment purposes during cross-examination, however, the impeaching party must establish the material as a recognized authority in the particular field of expertise. See e.g. *Wendell v. Central Power and Light Co.*, 677 S.W.2d 610 (Tex.Civ.App.1984), ref. n.r.e. (expert witness may be cross-examined based on excerpts read from book recognized as authoritative); *Oil Ins. Ass'n v. Royal Indem. Co.*, 519 S.W.2d 148 (Tex.Civ.App. 1975), ref. n.r.e. (expert witness may be cross-examined on basis of book which he has recognized as authoritative or on which he has based his opinion); *Gray v. L–M Chevrolet Co.*, 368 S.W.2d 861 (Tex.Civ. App.1963), ref. n.r.e. (improper for attorney to read excerpts from medical book and ask medical witness, who does not recognize author of book, if witness agrees or disagrees with excerpts); *Cross v. Houston Belt & Terminal Ry. Co.*, 351 S.W.2d 84 (Tex.Civ.App.1961), ref. n.r.e. (reversible error for defense counsel to read from medical book in cross-examination of plaintiff's medical witness, who did not recognize textbooks as authoritative); and *Bowles v. Bourbon*, 148 Tex. 1, 219 S.W.2d 779 (1949)

16. *Aliff*, 627 S.W.2d 166, was decided prior to the enactment of the criminal evidence rules. In passing Rule 610, this Court neither abolished nor expanded the rule pronounced in *Aliff*, at 170.

(expert witness may be asked to identify work as standard authority, and if he recognizes it, excerpts may be read therefrom solely to discredit witness's testimony or test its weight).

■ To recapitulate the pertinent facts germane to this point of error: The State elicited Sarmiento's opinion as to the future dangerousness of a hypothetical person based on the evidence in this cause. Sarmiento failed to give a definite answer as to this person's future dangerousness because he wanted to qualify his answer with reference to studies showing this prediction was oftentimes inaccurate, although he did subsequently admit common sense dictated a conclusion of probable future violent behavior by this hypothetical person. After the indefinite answer, the prosecutor asked the objected to question which inquired into the doctor's awareness of studies showing repeat offenders are responsible for a majority of violent crimes and specifically mentioned a Rand Corporation study.

For two reasons we agree with appellant that the State's question was an improper question which assumed facts not in evidence. In understanding our analysis it is helpful to remember that the State's question did two separate things: it asked about familiarity with studies in general concerning the responsibility for violent crimes and also about one study in particular by the Rand Corporation; and then it gave the results of those studies, *viz*, that repeat offenders are responsible for the great majority of violent crimes in this country.

We first agree the prosecutor's question was improper for impeachment purposes because, although the studies which the prosecutor referred to are that type of inadmissible hearsay which an expert may properly consider when giving an opinion

at trial, the State wholly failed to establish these "studies" as recognized authorities or "standard authorit[ies]" in the field of recidivism or predictions of future dangerousness. See *Aliff*, 627 S.W.2d 166. There was also no evidence in the record of any studies done in this regard.

Secondly, the question, in giving the results of the studies, assumed facts not in evidence and also gave the jury the impression that not only were there studies done in this area, but that they showed a particular result. Prohibiting this kind of interjection in front of the jury of prejudicial hearsay as fact is exactly the purpose of the objection "assumes facts not in evidence" as well as the established practice of first proving that a published work is "authoritative" before the contents of the work are revealed to the jury via "impeachment" of the witness. Thus we find under Rule 610 that appellant's objection to the question was proper, and the trial court erred in overruling his objection. Again, because of the remand in this cause, we do not engage in a harmless error analysis at this time.

■ In appellant's thirteenth point of error, he argues the trial court erred in admitting into evidence at punishment an unadjudicated extraneous offense because the State failed to prove beyond a reasonable doubt he committed the extraneous act.[17] The extraneous offense occurred approximately nine years prior to trial when appellant was a juvenile. Melva Garcia, the complainant, testified she was chased by appellant while she was playing near their apartment complex. As she was running appellant pushed her into a bayou, and as she came out of the water, appellant grabbed her arm, said "Let's rape this bitch" to his friends, and also grabbed her buttocks. Garcia managed to get free of

---

17. Appellant contends in his brief that two witnesses who testified during punishment could not positively identify him as the alleged perpetrator. A judge and a police officer testified to administering *Miranda* warnings to appellant and taking his statement regarding an aggravated robbery committed in 1979. The statement was not admitted into evidence because neither witness could definitely identify appellant as the

individual with whom they spoke since this offense, the aggravated robbery, occurred seven years prior to trial. Appellant confuses this evidence with the evidence he complains was erroneously admitted in this point of error. These two witnesses had nothing to do with the events surrounding appellant's attack on Melva Garcia.

appellant's hold and ran home to call the police and tell her mother what had happened. Appellant contends this testimony was inadmissible because the criminal charge which resulted from this offense was subsequently dismissed for insufficient evidence; thus, the State could not prove beyond a reasonable doubt appellant committed this extraneous transaction, and it was therefore inadmissible at punishment.

The admissibility of evidence at the punishment phase of a capital murder trial is governed by Art. 37.071, V.A.C.C.P. Any evidence deemed "relevant to sentence" by the trial court may be presented. Art. 37.071(a). This Court has found evidence of unadjudicated extraneous offenses to be relevant at least as to the second special issue at punishment. See *Marquez v. State*, 725 S.W.2d 217 (Tex.Cr.App.1987); *Rumbaugh v. State*, 629 S.W.2d 747 (Tex. Cr.App.1982), and cases cited therein. There is no provision within Art. 37.071(a) requiring the State to show a conviction for an extraneous offense as a predicate for its admissibility, nor has this Court ever adopted one. In fact, this Court has rejected claims that Art. 37.071(a) limits proof of extraneous offenses to those resulting in conviction. See *Rumbaugh v. State*, 589 S.W.2d 414 at 418 (Tex.Cr.App.1979); *Gentry v. State*, 770 S.W.2d 780, 793 (Tex.Cr. App.1988).

The evidence of appellant's assault on Melva Garcia was relevant to his future dangerousness. The trial judge did not err in admitting this testimony. Appellant's thirteenth point of error is overruled.

In the fourteenth point of error, appellant contends the trial court reversibly erred when it charged the jury at punishment, over his objection, the following on parole:

> During your deliberations, you are not to consider or discuss any possible action of the Board of Pardons and Paroles or of the Governor, or how long the defendant

would be required to serve to satisfy a sentence of life imprisonment.

Appellant's contention is without merit. The matter of parole or an inmate's release thereon is not a proper consideration for the jury's deliberations at punishment. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr. App.1979), cert. denied 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980); *White v. State*, 629 S.W.2d 701 (Tex.Cr.App.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). The trial judge's instruction was therefore a correct statement of the law. This Court has held that the giving of such an instruction is not reversible error. *Williams v. State*, 668 S.W.2d 692 (Tex.Cr.App.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 545 (1984), reh'g. denied, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832, cited with approval in *Andrade v. State*, 700 S.W.2d 585 (Tex.Cr.App.1985), and *Knox v. State*, 744 S.W.2d 53 (Tex.Cr.App.1987). Appellant's fourteenth point of error is overruled.

Appellant asserts in his fifteenth point of error that the trial court erred in instructing the jury on the special issues contained within Art. 37.071(b)(1) and (2), V.A.C.C.P. Appellant contends the two issues are unconstitutionally vague and that the terms "intentional" and "deliberate" are synonymous.[18] Both contentions are without merit.

The submission of the punishment issues under Art. 37.071(b) is a mandatory procedure in a capital case once a finding of guilt has been made by the jury. *Williams v. State*, 674 S.W.2d 315, 319 (Tex.Cr.App.1984). Appellant recognizes in his brief that this Court has held Art. 37.- 071 is not unconstitutionally vague. *Williams*, 668 S.W.2d at 700, citing *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). See also *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Cr.App. 1986). This Court has also recently held that the terms "deliberate" and "intentional" have different meanings for purposes

---

18. Appellant contends this Court acknowledged in *Williams*, 674 S.W.2d 315, that the two terms have similar meanings. He submits that in a death penalty case there should be no ambiguity in the statute. We have never held the statute unconstitutionally ambiguous, and any perceived need for change in the statute is more appropriately addressed to our state legislature.

of our capital murder sentencing scheme. *Tucker v. State,* 771 S.W.2d 523, 537 (Tex. Cr.App.1988). Appellant's fifteenth point of error is overruled.

■ In the seventeenth point of error appellant submits the trial court erred in denying his pre-trial motion requesting the prospective jurors be summoned to the courtroom in groups of thirty so that he could have an opportunity to review the list of venirepersons pursuant to Art. 34.04, V.A.C.C.P. Appellant argues he was harmed by this denial because he could not adequately review the "massive numbers of jurors" which are called in Harris County.

Appellant filed a pre-trial motion for the jury list requesting the list at least two days prior to his trial, which is his statutory right under Art. 34.04. He also stated in his motion he did not wish "to waive his right" to have the list of prospective jurors at least five days prior to his trial. At the hearing on appellant's pre-trial motions, the trial judge stated, when addressing appellant's motion to shuffle, that she would bring the prospective jurors into the courtroom twelve at a time. In conjunction with his motion pursuant to Art. 34.04, appellant moved for panels of thirty. The trial judge explained the unfeasibility of the larger panel and voir dire commenced with the trial judge utilizing panels of various sizes. The trial judge also overruled appellant's motion for five days notice of the jury list.

Appellant's claim is remarkably similar to the one addressed in *Smith v. State,* 744 S.W.2d 86 (Tex.Cr.App.1987). In *Smith* the defendant filed a pre-trial motion requesting jury lists five days in advance of trial, and he also asked that jurors be summoned in groups of thirty. The case was likewise tried in Harris County, and the defendant based his motion on his inability to adequately review the jury lists because of the large number of persons summoned each week in that county. The trial judge overruled the defendant's motions. This Court held there was no violation of the defendant's due process rights or right to effective assistance of counsel under the

voir dire procedure utilized by the trial court. *Smith,* 744 S.W.2d at 96.

Appellant recognizes in his brief that the *Smith* holding is contrary to his position, but he "respectfully requires [us to] reconsider this issue" which we decline to do. We find the trial court complied with the letter of the law in Art. 34.04, but we reiterate what was stated in *Smith,* at 96:

> While we may agree with appellant that the two day period for examination of juror lists enunciated in Article 34.04, supra, provides little opportunity in urban counties for investigation of prospective jurors, we must find that the trial court did comply with the letter of the article. This Court is not the legislature. Our duty is to read and apply the law, not write it. Until the legislature deems it necessary to amend Article 34.04, supra, and provide some meaningful review of jury lists for defendants in urban counties, two days notice, as was given in the instant case must suffice.

Accordingly, we overrule appellant's seventeenth point of error.

Appellant presents two additional issues in a supplemental brief; both issues are founded on the recent Supreme Court ruling in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which was pending before the Supreme Court at the time appellant filed these supplemental points.

■ In point of error number twenty-seven, appellant contends it is cruel and unusual punishment to execute him since the record shows his reasoning capacity is that of a person with a very low intelligence quotient (I.Q.). Dr. Sarmiento testified during punishment that appellant had an I.Q. of 57 which is in the mentally deficient range. Appellant contends the Eighth Amendment to the United States Constitution prohibits his execution.

In *Penry,* the petitioner argued, *inter alia,* that "execution of a mentally retarded person like himself with a reasoning capacity of approximately a 7 year old would be cruel and unusual because it is disproportionate to his degree of personal culpability." The Supreme Court agreed

that mental retardation is a factor which may lessen a defendant's culpability for a capital offense, but the Court refused to hold that the Eighth Amendment precludes execution of any mentally retarded person of Penry's ability convicted of a capital offense "simply by virtue of their mental retardation alone." *Penry*, 109 S.Ct. at 2958. The Court also concluded the Eighth Amendment did not categorically prohibit the execution of mentally retarded persons. *Id.* at 2955.

Appellant's only argument as to why his death penalty is unconstitutional is that because of his limited mental capacity he "falls within the category of death-row inmates covered by the [*Penry* appeal]". As noted, the Supreme Court did not hold it was violative of the Eighth Amendment to execute such capital offenders. Therefore, the *Penry* decision provides no relief for appellant, and we overrule his twenty-seventh point of error.

In his final point of error, number twenty-eight, appellant raises two contentions, *viz:* that the trial court should have instructed the jury that they were to take into consideration all evidence that mitigated against the sentence of death, i.e., a *Penry* instruction (number 28(a)); and the trial court should have defined terms in the punishment issues so the jury could properly consider his mitigating evidence (number 28(b)). As to his first claim, appellant concedes in his supplemental brief that he did not request any instructions concerning the jury's consideration of the mitigating evidence nor did he object to the jury charge complaining of the omission of an instruction relevant to the consideration of mitigating evidence. Arts. 36.14 and 36.15, V.A.C.C.P. Appellant contends, however, that his failure to object is excused because this issue had not been developed at the time of his trial. In *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App.1991) (Campbell, J., concurring to Part II. A), this Court determined that because of the novelty of the *Penry* decision, an appellant may raise this contention for the first time on appeal. Thus, we proceed to a discussion of the merits in this cause.

Testimony from appellant's sister indicated appellant was from a poor family who lived on welfare. At the time appellant was born, his mother purchased food for the family with food stamps, which supply was never enough for the month. Towards the end of the month, the family (6 children) would subsist on bread, mayonnaise and butter. Appellant's sister also testified that their father mistreated them and their mother. She detailed one incident when her father tried to rape her, and when appellant intervened, his father began beating him. Appellant's father apparently then "beat up" his mother and sister. Appellant's sister also revealed one incident in which she specifically saw her father beat appellant with an extension cord, but he "wouldn't hit Carlos (appellant) with fishing rods like he would hit me, but he would hit him with extension cords or sometimes his fist." Also, appellant's father apparently was only around intermittently. Finally, appellant's sister testified appellant was high from sniffing paint one time when he was 9 or 10 years old.

Through his supplemental brief, appellant argues for the first time his low I.Q. as mitigating evidence. As noted, Dr. Sarmiento was called as a defense witness during punishment. Sarmiento reviewed on February 20, 1979, a psychological evaluation done on appellant. The evaluation assessed intelligence, school skills, the likelihood of organic brain dysfunction, and the psychological state of the appellant. At the time of this review, Sarmiento was working with the juvenile probation department and had been retained to consult with the staff on cases of suspected mental retardation. Sarmiento testified that as far as appellant's intelligence, the main focus of his review, appellant was "in the mentally deficient range overall." Appellant's I.Q. was 57 which in "the older days" resulted in the classification "retarded."

On cross-examination, Sarmiento admitted he had never seen appellant, but rather only reviewed his test scores in 1979. Sarmiento also admitted that in 1979 he advised against a finding that appellant was mentally retarded and described him instead as having "learning disability with

cultural deficiency." The doctor agreed the appellant had the capacity to be "street smart." Sarmiento also stated generally that "truly retarded" persons may not be able to function in daily life, but a person whose I.Q. is adversely affected by "some other sort of interference" may be much more capable of functioning in real life situations than is reflected by I.Q. tests.

Upon review of this evidence and the *Penry* decision, we are compelled to conclude appellant was entitled to a charge instructing the jury that it could consider and give mitigating effect to appellant's evidence. The failure to so charge the jury resulted, in this cause, to reversible error. Appellant's twenty-eighth point of error is sustained.

 In appellant's second contention, number 28(b), he argues the trial court should have defined terms in the two special issues "in such a way that in answering these questions all mitigating evidence could have been taken into consideration." Appellant objected to the jury charge on the ground that the term "intentional," as found by the jury at guilt/innocence, is equivalent in meaning to the term "deliberate" as used in the first punishment issue. This Court has repeatedly refused to require a trial judge to define the term "deliberately" in the jury charge, and we adhere to that precedent.[19] See *Lewis v. State*, 815 S.W.2d 560 (Tex.Cr.App.1991), and cases cited therein. Moreover, given what we held in point of error number 28(a), we believe no further instruction was necessary. This second contention is overruled.

Having sustained appellant's first contention in point of error number 28, the judgment of the trial court is reversed and this cause is remanded to that court.

McCORMICK, P.J., and BAIRD and MALONEY, JJ., concur in the result.

WHITE, J., dissents.