

# IN THE
## TENTH COURT OF APPEALS

### No. 10-08-00365-CR

**TIMOTHY VERNON BECK,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 45,571

## MEMORANDUM OPINION

Appellant Timothy Vernon Beck was charged by indictment with the offense of tampering with or fabricating physical evidence. The indictment charged Beck as follows:

> **TIMOTHY VERNON BECK** hereinafter styled Defendant, on or about the **17TH DAY OF APRIL 2008** and before the presentment of this indictment, in the County of Hill and State aforesaid, did then and there knowing an investigation was in progress, to-wit: investigation of possession of marijuana and/or a child welfare complaint, alter and/or conceal and/or destroy a thing, to-wit: suspected marijuana with intent to impair its availability as evidence in said investigation.

A jury found him guilty of the lesser-included offense of attempted tampering with or fabricating physical evidence and assessed his punishment, enhanced by two previous felony convictions, at twenty years' imprisonment. In three issues, Beck appeals. We will affirm.

## BACKGROUND

Shawn Hernandez, an investigator for the Texas Department of Family and Protective Services, received a child-welfare complaint regarding a male minor named M.M. Hernandez and several Hillsboro police officers subsequently met with M.M. at his school. Hernandez and Officer Jeremy Gloer then went to M.M.'s house. When they arrived at M.M.'s house, they knocked on the door, and L.C., M.M.'s mother, answered. Hernandez told L.C. that he and Gloer were there investigating a child welfare complaint and asked if they could come inside to talk to her about it. L.C. replied that they could, and they all proceeded to the kitchen area of the home. Hernandez stated that once they entered the home, Beck, whom M.M. had referred to as his father, came from one of the other rooms and followed them into the kitchen area. Hernandez told Beck that he wanted to speak to L.C. alone. Hernandez testified that they generally meet with each parent individually to determine whether the stories are consistent. But Beck said that "anything that needed to be said needed to be said in front of both of them together." Gloer stated that he then told Beck that they needed to speak to L.C. privately about her son and asked if Beck would mind going into the other room. Beck did not want to go into the other room, became argumentative, and tried to stay in the kitchen area. Gloer thus took Beck into another room, and

Hernandez continued to speak with L.C. After escorting Beck into the bedroom and asking him if he would stay there, Gloer returned to the kitchen area. Gloer stated that Beck stayed in the other room, but he continued to loudly question why they needed to talk to L.C. about M.M. and why they needed to be in the kitchen.

In the kitchen, Hernandez asked L.C. about drug use in the home, which is a standard question asked in every investigation. She denied any drug use. Hernandez testified, however, that Gloer had said that he had detected the smell of marijuana. Hernandez and Gloer thus asked L.C. for permission to search the residence. She said that they could. Soon after, Gloer found a baggie containing a small amount of a green, leafy substance in plain view on the shelf in the kitchen. Based on his training and experience, Gloer believed the substance to be marijuana. Hernandez testified that L.C. stated that it was marijuana and that when he asked her whom it belonged to, she replied that it was Beck's. On the other hand, L.C. testified that she told Hernandez and Gloer that the baggie belonged to a friend of Beck's who was also living in the house at that time. The friend was in the living room when Hernandez and Gloer arrived.

Gloer testified that Beck could hear them talking from the other room and began yelling, "What are you doing?" Beck then started to come into the kitchen, but Gloer immediately stopped him at the door and took him back into the other room. Once in the other room, Beck immediately said, "That's not marijuana." Gloer replied that it appeared to be marijuana. Beck then continued to be loud and kept saying that it "wasn't marijuana" and that they "didn't have anything." Gloer stated that he then told Beck that he believed it was marijuana and that that was important because they

were there to investigate a child welfare situation, and anytime a child's welfare is in concern, they look into every aspect of the place where the child is living, including whether there is drug use in the home. Beck nevertheless continued to say that it was not anything. Gloer then stated that he believed it was marijuana, held out the baggie, and said, "You're trying to tell me that this is not marijuana?" Beck then said, "Let me see it," and took the baggie from Gloer. Beck then opened the baggie, reached inside and grabbed the substance in the baggie, and threw it out on the "real shaggy type" carpet.[1]

Gloer immediately removed Beck from the residence and took him into custody. After another officer arrived and took control of Beck, Gloer went back into the residence to look for the baggie but could not recover all of the evidence. He eventually located the baggie outside the house beside the front porch, but very few leaf particles, which were later confirmed to be marijuana, remained in it. Gloer stated that Beck's actions in taking the marijuana out of the baggie and throwing it into the carpet concealed and altered the evidence, impairing its availability for their investigation.

## EXTRANEOUS-OFFENSE EVIDENCE

In his first issue, Beck contends that the trial court erred in allowing the full indictment to be read in front of the jury because the phrase "a child welfare complaint" in the indictment is "an extraneous offense or an allusion to an extraneous offense."

---

[1] L.C. testified, however, that she could see Gloer talking to Beck in the other room. She saw Gloer give the baggie to Beck, Beck look at it, and then Beck give it back to Gloer.

Rule of Evidence 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant for the purpose of proving the character of the defendant in order to show that he acted in conformity with that character on the occasion in question. TEX. R. EVID. 404(b); *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). The indictment, however, is not *evidence* of guilt. Thus, the phrase "a child welfare complaint" in the indictment is not extraneous-offense evidence prohibited by Rule 404(b). *See* TEX. R. EVID. 404(b). We overrule Beck's first issue.

In his second issue, Beck contends that the trial court erred in allowing irrelevant extraneous offenses to be presented to the jury by admitting evidence regarding the child welfare complaint investigation. The standard of review for the admissibility of evidence is abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under an abuse of discretion standard, we will uphold the decision of the trial court concerning the admissibility of evidence unless the ruling rests outside the zone of reasonable disagreement. *Id.*

Circumstances of the offense that tend to prove the allegations in the indictment are not extraneous offenses. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Here, the evidence regarding the child-welfare complaint investigation was relevant to prove the State's allegation in the indictment that Beck knew "an investigation was in progress, to-wit: investigation of possession of marijuana and/or a child welfare complaint." Therefore, the trial court did not err in admitting the evidence regarding the child welfare complaint investigation because this evidence went to a material element of the State's

case and was not an extraneous offense. *See* TEX. PEN. CODE ANN. § 37.09(a)(1) (Vernon 2003); *Ramirez*, 815 S.W.2d at 643. We overrule Beck's second issue.

## LEGAL SUFFICIENCY

In his third issue, Beck contends that the trial court erred in denying his motion for directed verdict in which he argued that there was insufficient evidence to sustain a conviction.

A challenge to a trial court's denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person commits the offense of tampering with or fabricating physical evidence if, knowing that an investigation or official proceeding is pending or in progress, he alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding.

TEX. PEN. CODE ANN. § 37.09(a)(1). A person commits the offense of attempted tampering with or fabricating physical evidence if, with specific intent to commit the offense of tampering with or fabricating physical evidence, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense. *See* TEX. PEN. CODE ANN. § 15.01(a) (Vernon 2003).

Citing *Pannell v. State*, 7 S.W.3d 222 (Tex. App.—Dallas 1999, pet. ref'd), Beck argues that there is no evidence that he tried but was not successful in causing the concealment, destruction, or altering of evidence when he knew that an investigation *regarding the item that he attempted to destroy* was in progress. However, the Court of Criminal Appeals has concluded that *Pannell* erroneously added a mental-state requirement that was not supported by the language of subsection 37.09(a)(1). *See Williams v. State*, 270 S.W.3d 140, 144 (Tex. Crim. App. 2008). "[T]he title of the investigation and the evidence destroyed need not match in an indictment alleging an offense under section 37.09(a)(1), as long as the offender destroyed a thing with the intent to impair its availability as evidence in an investigation that he knows is in progress." *Id.* at 145.

In this case, the evidence is legally sufficient. While at M.M.'s house investigating a child welfare complaint, Gloer found a baggie of marijuana. When he confronted Beck with the baggie, telling him that he believed it was marijuana and that that was important because they were there to investigate a child-welfare situation, Beck took the baggie from Gloer, grabbed the substance inside, and threw it out onto the carpet. Considering the evidence in the light most favorable to the verdict, a

rational jury could have found beyond a reasonable doubt that, knowing that an investigation of a child-welfare complaint was in progress, Beck attempted to alter or conceal or destroy the marijuana with the intent to impair its availability as evidence in the investigation. We thus overrule Beck's third issue.

## CONCLUSION

We affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed September 1, 2010
Do not publish
[CR25]