Opinion issued April 18, 2002

















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00032-CR






ALBERT ANDREW YEN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 1015202






O P I N I O N 


 A jury convicted appellant, Albert Andrew Yen, of indecent exposure and
assessed punishment at 180 days in jail with a recommendation of community
supervision. In accordance with the jury's recommendation, the trial court suspended
appellant's sentence and assessed punishment at two years of community supervision
with a $2,000 fine. In two points of error, appellant complains the trial court erred
by overruling his objections and admitting a portion of the complainant's testimony,
which was not relevant and constituted inadmissible hearsay. We affirm.

Background

 Complainant, Desine Norris, testified that she went to see appellant, who is a
neurologist, after developing a pain in her right side, shoulder, and neck. 
Complainant's family doctor, Dr. Carrigan, referred her to Dr. Phillip Blum, a
neurologist. Because she could not get an appointment with Dr. Blum, complainant
made an appointment with appellant, one of Dr. Blum's associates.

 At the time of her doctor's visit, appellant questioned complainant about her
medical history. Appellant then told complainant he would like to perform some
neurological tests. He requested that complainant disrobe to her underwear and put
on a hospital gown. Appellant left the examination room while complainant
undressed. 

 Appellant returned to the examination room and began performing various
reflexive and neurological tests on complainant. After several initial tests, appellant
instructed complainant to sit at the end of the examination table and put her left hand
behind her with her palm facing upward. He told her that he would be placing several
objects in her hand for her to identify. First, appellant placed a metal tape measurer
in complainant's hand. When complainant correctly identified the tape measurer,
appellant remarked, "Very good." Appellant next placed a roll of medical tape in
complainant's hand, which she also correctly identified. Appellant said, "Boy, you
really are good." Appellant then asked complainant to place her right hand behind
her; at that point, complainant had both her right and left hands behind her back. 
Appellant then placed what complainant identified as a reflex hammer in her hand. 
After she identified the hammer, appellant told complainant, "Boy, you really are
good. The next item I place in your hand may take you a little longer to identify, so
you may have to squeeze it or rub it."

 Appellant then placed his penis in complainant's hand. Complainant was in
disbelief; she jerked her hand away and looked down to see appellant placing his
penis back in his pants. Complainant believed it to be appellant's penis because she
felt liquid in her hand and pubic hair on her finger. Complainant also believed that
appellant was sexually aroused because she saw that his penis was hardening. 

 When complainant turned to face appellant, she said, "How dare you." 
Appellant replied, "I don't know what you are talking about." Complainant told
appellant, "You know damn well what you did. You just placed your penis in my
hand." Appellant told complainant that what she had felt was not his penis but a soda
"koozie," i.e., a foam soda can cooler. Appellant showed complainant that he had a
koozie in his doctor's bag. When appellant told her that what she had felt was a soda
koozie, complainant informed him that she knew the difference between a koozie and
a man's penis and that what she had felt in her hand was a man's penis. 

 Appellant told complainant that he was sorry she felt something inappropriate
had taken place. Complainant asked appellant to leave so she could dress. Appellant
refused to leave. He stood in front of complainant in what she perceived to be an
intimidating manner and told her, "You came for a medical condition. Now you're
going to sit here and listen to me while I tell you what the problem is." Complainant
testified that she was afraid that appellant might hurt her. After appellant finished
telling her what he believed was medically wrong with her, he again said he was
sorry. As he left the examination room, he turned to complainant and stated, "Please
forgive me." 

 Complainant got dressed and walked out into the hallway. She told the
receptionist what happened and left appellant's office. Complainant found a restroom
and scrubbed her hands with soap and water before going to her car. She called her
husband to tell him what had happened, and then she went home. Complainant called
Dr. Carrigan's office and told his nurse what had happened. Complainant also called
Dr. Blum's office and spoke with another of Dr. Blum's associates.

 Dr. Carrigan's nurse contacted complainant and told her to call the police. 
Complainant called the Houston Police Department to report the incident. She met
with a detective and gave a statement.

 At trial, the prosecutor asked complainant if she had sought additional medical
care for the problem with her neck. Complainant testified that, about two weeks after
she saw appellant, she went to see another neurologist, Mary Ellen Vanderlick. 
Complainant saw Dr. Vanderlick about eight times. Dr. Vanderlick also performed
tests on complainant. Complainant testified that Dr. Vanderlick diagnosed her with
a bulging disk that required her to miss work. When asked whether she personally
felt that she had anything wrong with her hands, particularly her right hand,
complainant testified that she did not. 

 Complainant also testified that she had not sued appellant and did not plan to
file a lawsuit. She stated she had no hope to recover any money because of the
incident. 

 Houston Police Sergeant W.T. Dunn testified that he took a statement from
complainant and also spoke with appellant both on the telephone and in person. 
Appellant told Sergeant Dunn that, while complainant was changing into a hospital
gown, he went to the restroom. Appellant stated that he forgot to zip up his pants
after using the restroom. When Sergeant Dunn told appellant that complainant
claimed she had actually seen his penis, appellant told Sergeant Dunn, "Conceivably
she may have actually gotten a glimpse of my penis. She may have actually got a
glimpse of my penis, potentially." Appellant stated that he was wearing loose fitting
boxer shorts at the time. Appellant also told Sergeant Dunn that what complainant
had felt in her hand was a soda koozie. 

 In two points of error, appellant contends complainant's testimony regarding
her diagnosis and treatment by Dr. Vanderlick, the neurologist who treated her after
she saw appellant, was inadmissible because it was irrelevant and constituted
inadmissible hearsay.

Standard of Review

 Because trial courts are in the best position to make the decision on the
question of substantive admissibility of evidence, an appellate court must review a
trial court's admissibility decision under an abuse-of-discretion standard. Powell v.
State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); see also Montgomery v. State, 810
S.W.2d 372, 391(Tex. Crim. App. 1990) (stating trial court "has the best vantage
from which to decide" admissibility questions); Roberts v. State, 29 S.W.3d 596, 600
(Tex. App.--Houston [1st Dist.] 2000, pet. ref'd). The test for abuse of discretion is
a question of whether the court acted without reference to any guiding rules and
principles. See Montgomery, 810 S.W.2d at 380. Another way of stating the test is
whether the act was arbitrary or unreasonable. See id. 

 This standard requires an appellate court to uphold a trial court's admissibility
decision when that decision is within the zone of reasonable disagreement. Id.;
Roberts, 29 S.W.3d at 600. An appellate court would misapply the appellate abuse-of-discretion standard of review by reversing a trial court's admissibility decision solely
because the appellate court disagreed with it. Montgomery, 810 S.W.2d at 391;
Roberts, 29 S.W.3d at 600.

Relevance

 In his first point of error, appellant claims the trial court erred when it
overruled his objection to the relevance of complainant's testimony regarding her
diagnosis and treatment from the second neurologist, Dr. Vanderlick. 

 Relevant evidence is defined as "evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence." Tex. R. Evid. 401.
Under the rules of evidence "all relevant evidence is admissible" while "evidence
which is not relevant is inadmissible" Tex. R. Evid. 402. However, the rules of
evidence provide that "[a]lthough relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Evid. 403.

 Questions of relevance should be left largely to the trial court, relying on its
own observations and experience, and will not be reversed absent an abuse of
discretion. Montgomery, 810 S.W.2d at 391. Evidence merely tending to affect the
probability of the truth or falsity of a fact in issue is relevant. Mendiola v. State, 21
S.W.3d 282, 284 (Tex. Crim. App. 2000); Montgomery, 810 S.W.2d at 376. The
evidence in question is relevant even if it only provides a "small nudge" in proving
or disproving a fact of consequence to the trial. See Mendiola, 21 S.W.3d at 284.

 Complainant testified that her subsequent visit to Dr. Vanderlick was close in
time to the incident, was for the same type of medical treatment and ailment, and was
to the same type of doctor, a neurologist. She testified that Dr. Vanderlick diagnosed
her with a bulging disc, which required complainant to miss work. Complainant
stated that Dr. Vanderlick did not indicate anything was wrong with complainant's
hands. Thus, Dr. Vanderlick's diagnosis and treatment, which relates to
complainant's physical condition at the time of the incident, is relevant because it
would assist the jury in assessing whether complainant's physical condition affected
her ability to accurately identify the objects appellant placed in her hand. 

 Moreover, in summation, appellant's counsel mentioned that Dr. Vanderlick
told complainant her injury was serious enough that she should stay home from work. 
Appellant's counsel suggested this evidence showed it was unlikely, due to her
injuries, that complainant could have turned around quickly enough to see appellant's
penis before he placed it back in his pants. 

 The testimony about Dr. Vanderlick's diagnosis and treatment was also
relevant to show whether complainant had a medical condition that would lend itself
to evaluation by the type of tests appellant performed. Complainant testified that Dr.
Vanderlick also performed tests as part of her examination.

 In summation, appellant's counsel also suggested that complainant may have
made her accusations against appellant to recover civil damages against appellant.
Complainant's testimony that Dr. Vanderlick diagnosed her with a bulging disk is
relevant to show whether complainant was actually suffering from a medical problem
when she visited appellant or whether she was fabricating her condition to create a
situation by which she may gain a financial advantage, i.e., sue appellant for civil
damages. 

 Complainant's testimony was relevant because it tended to affect the
probability of the truth or falsity of a fact in issue. See Mendiola, 21 S.W.3d at 284. 
Consequently, because we cannot say the trial court acted without reference to any
guiding rules and principles or the act was arbitrary or unreasonable, we hold the trial
court did not abuse its discretion. 

 We overrule appellant's first point of error. 

Hearsay

 In his second point of error, appellant claims the trial court erred in admitting
complainant's testimony, over appellant's hearsay objections, that Dr. Vanderlick told
her that she had a bulging disk, and that Dr. Vanderlick did not indicate that there was
anything wrong with complainant's hands. The following is the relevant testimony
related to this issue:

 [PROSECUTOR]: Did [Dr. Vanderlick] go ahead and diagnose you
with any type of physical problem with your shoulder or neck area?


 [COMPLAINANT]: Yes. She, at that time, told me that I had a bulging
disk.


 [DEFENSE COUNSEL]: Objection, hearsay, Your Honor.


 THE COURT: Overruled.


 . . . . 


 [PROSECUTOR]: Did [Dr. Vanderlick] ever indicate to you in any way
that there was anything wrong with your hands?


 [COMPLAINANT]: Never.


 [DEFENSE COUNSEL]: Objection, hearsay.


 THE COURT: Overruled.


 To preserve error for review, a party must make a timely and specific objection
that is followed by an adverse ruling. Tex. R. App. P. 33.1; see Ramirez v. State, 815
S.W.2d 636, 643 (Tex. Crim. App. 1991). The objection must be made as soon as the
basis for the objection becomes apparent; otherwise, the objection is waived. Dinkins
v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If a question clearly calls for
an objectionable response, a defendant should make an objection before the witness
responds. Id.. If he fails to object until after an objectionable question has been
asked and answered, and he can show no legitimate reason to justify the delay, his
objection is untimely and error is waived. Id.; see also Girndt v. State, 623 S.W.2d
930, 934 (Tex. Crim. App. 1981). Here, the State's questions regarding what Dr.
Vanderlick told complainant clearly called for a hearsay statement. The ground for
objection was apparent when the question was asked. However, appellant offered no
explanation for failing to object before complainant answered. We hold that
appellant's failure to make a timely objection waived error for review. 

 We overrule appellant's second point of error. 


Conclusion

 We affirm the trial court's judgment.


 


 Margaret Garner Mirabal

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.

Do not publish. Tex. R. App. P. 47.