Affirmed and Opinion filed _____________, 2002














Affirmed and Memorandum
Opinion filed June 5, 2003.                                                      

 

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00046-CR  

____________

 

ROBERT GARZA,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 361st District Court

                                                           Brazos
 County, Texas                       

Trial Court Cause No.
28,819-361




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



M E M O R
A N D U M   O P I N I O N

            A jury convicted
appellant of aggravated assault with a deadly weapon and assessed punishment at
18 years’ confinement.  Because all dispositive issues are clearly settled in law, we issue
this memorandum opinion.  Tex. R. App. P. 47.1.  We affirm.

1. Legal and Factual Sufficiency

First, appellant contends the
evidence is legally and factually insufficient to support the deadly weapon
finding.  We apply the usual standards of
review.  See Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2797 (1979); Johnson v. State, 23 S.W.3d 1, 10 (Tex. Crim.
App. 2000).

A person commits aggravated assault
with a deadly weapon if the person uses or exhibits a deadly weapon during the
commission of an assault.  Tex. Pen. Code
§ 22.02(a)(2). 
A “deadly weapon” includes anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.  Id. §
1.07(a)(17). 
The term includes conduct that threatens deadly force, even if
the actor has no intention of actually using deadly force.  See
McCain v. State, 22
S.W.3d 497, 503 (Tex. Crim. App. 2000).

Here, after appellant beat his
mother and sister with his fists, he cornered them in a bathroom with a
serrated knife and repeatedly used it to stab a mirror (which shattered) and a
door.  Three officers testified that a serrated
knife such as the one used by appellant could be a deadly weapon, depending
upon the manner in which it was used.  Although
appellant’s family members denied at trial that appellant pointed the knife at
them, Officer Sayers testified without objection that appellant’s sister said
he had pointed it at her and threatened to stab her with it.  Considering the damage appellant did to the
bathroom mirror and door, the knife was clearly capable of causing death or
serious bodily injury if used in that manner toward a person.  We find the evidence is both legally and
factually sufficient to support the jury’s deadly weapon finding.  

2. Hearsay

Second, appellant argues Officer Elkins should not have
been allowed to testify that appellant’s sister told him several hours after
the incident that appellant pointed the knife at her throat.  Appellant’s hearsay objection was overruled on
the basis that this was an excited utterance. 
See Tex. R. Evid. 803(2).  Admission was within the sound discretion of
the trial court, considering factors such as the time elapsed and whether the
statement was made in response to police questioning.  See Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim.
App. 2003).  The critical determination
is whether the declarant was dominated by the emotion
of the event at the time of the statement, thus reasonably showing it resulted
from impulse rather than reason and reflection. 
See id. 

Here, although the statement was made by appellant’s
sister five hours after leaving the home and in the course of police
questioning, appellant was still barricaded inside the home, which had been
surrounded by police in an armed standoff. 
Officer Elkins testified appellant appeared emotionally drained and
tired, and began to shake and cry while making her statement.  More important, her testimony at trial showed
that given time to reason and reflect she would protect her brother.  This suggests her original testimony was the
result of impulse rather than reason and reflection.

Moreover, even assuming admission was error, it was
harmless.  As noted above, there was
testimony from another officer based on statements made by appellant’s sister
immediately after her escape that established appellant’s threats toward her
with the knife.  Although at trial
appellant’s sister denied appellant threatened her, the 9-1-1 tape was played for the jury, so they
could hear her apparent terror at the time of the assault.  As the statement to Officer Elkins was
cumulative of other testimony about her statements at the time, we find any
error was harmless, and overrule this point.

3. Improper Comment

            Third, appellant
contends a statement made by the bailiff within the hearing of jurors alluded
to appellant’s incarceration, denying him a fair trial.  When the bailiff commented in front of jury
members that he was having difficulty transporting appellant to the courtroom,[1]
appellant’s attorney objected and requested a mistrial.  The bailiff did not mention jail or
incarceration, but appellant argues the jury could have only interpreted it
that way.  However, appellant does not
provide, nor are we aware of any cases in which such a comment was found to
violate the Sixth Amendment right to an impartial jury.  Even if we were to assume the trial court
erred in denying appellant’s motion for a mistrial, the error was harmless.  See Tex. R. App. P. 44.2(a); see, e.g., Cook v. State, 844 S.W.2d
697, 722–23 (Tex. Crim. App. 1992) (finding no harm
when defendant was shackled during trial, as defendant presented no evidence
that jurors actually observed the shackles). 
Consequently, we overrule this issue.

4. Photographs

Fourth, appellant complains the trial court erred in
admitting photographs of injuries to appellant’s mother, arguing the photos
were irrelevant and prejudicial.  Because
several witnesses testified without objection about the assault on appellant’s
mother and her subsequent physical condition, appellant waived any relevance
argument.  See McFarland v. State, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992) (holding when the same evidence is
presented elsewhere during trial without objection, no reversible error exists).
 We therefore concentrate our analysis on
whether the photographs were more prejudicial than probative.  

The admissibility of photographs is within the sound
discretion of the trial judge.  Chamberlain v. State, 998
S.W.2d 230, 237 (Tex. Crim. App. 1999).  Nonetheless, evidence may be excluded if its
probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury.  Tex.
R. Evid. 403. 
Factors that may be considered in determining whether the probative value of photographs is outweighed by their prejudicial effect
include the number of photographs offered, their gruesomeness, their detail,
their size, whether they are black and white or color, whether they are
close-ups, whether the body is naked or clothed, the availability of other
means of proof, and the circumstances unique to each individual case.  Narvaiz v. State, 840 S.W.2d 415, 429 (Tex. Crim.
App. 1992); Erazo v. State, 93 S.W.3d 533, 535 (Tex.
App.—Houston [14th Dist.] 2002, pet.
granted).  

State’s Exhibits 7 and 8 are two four-by-four
inch Polaroid photographs of appellant’s mother taken after appellant’s assault,
and depict her black eye and bruised face.  As we previously noted, there was verbal
testimony that appellant attacked his mother. 
See, e.g.,
Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim.
App. 1991) (finding if verbal testimony of matters depicted in a photograph is
admissible, generally so is the photograph itself); Erazo, 92 S.W.3d at 535. 
Of the State’s thirty-six exhibits, eight were photographs.  Six were pictures of the crime scene showing
the shattered mirror and pierced door caused by appellant’s repeated stabbing;
exhibits 7 and 8 were the only two showing physical injuries of either of
appellant’s victims.  The photographs are
not large and cannot be described as gruesome. 
In sum, we hold the trial court did not abuse its discretion in
admitting the two photographs of appellant’s mother. 

5. Parole Instruction

            Fifth, appellant argues
the trial court erred in including a statutorily mandated jury instruction on
parole, as appellant was not eligible for mandatory supervision.  The Court of Criminal Appeals has held such a
charge not to be error, constitutional or otherwise.  Luquis v. State, 72 S.W.3d 355, 364–68 (Tex. Crim. App. 2002). 
Accordingly, we overrule this issue. 


6. Ineffective Assistance of Counsel

            Lastly, appellant argues
trial counsel was ineffective in not objecting to the parole law
instruction.  To succeed on his complaint, appellant must demonstrate both objectively
deficient performance by his attorney and a reasonable probability of
prejudice.  See Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2064–65 (1984); Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  An ineffectiveness claim
must be firmly founded in the record.  See Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  Here, there was no motion for new
trial or other record showing the jury discussed, considered, or tried to apply
the parole instruction; nor was defense counsel given an opportunity to explain
what he did and why.  See Bone v. State, 77
S.W.3d 828, 836 (Tex. Crim. App. 2002).  Therefore,
we overrule this final issue.

            The judgment is
affirmed.

/s/                    Scott Brister

                                                                                    Chief Justice

 

Judgment
rendered and Memorandum Opinion filed June
 5, 2003.

Panel
consists of Chief Justice Brister and Justices Fowler and Edelman.

Do
Not Publish — Tex. R.
App. P. 47.2(b).

 











[1]
[DEFENSE COUNSEL]:                     Judge,
when I walked into the courtroom this morning, the first thing I saw was 

[the bailiff] standing at the door of the jury room with the
door open.  There were some jurors in
there.  He told me that people on both
sides of the door could hear that they were having problems and that they were
trying to get my guy here as quickly as possible.  He did not mention jail.

It is my
feeling that it’s clear what the meaning was. 
That my client is in jail.  I think that prevent that -- that knowledge
going to certain members of the jury prevents my client from a fair trial under
the due process clause, 5th Amendment, 14th Amendment of the United States
Constitution and due course of law under the Texas Constitution.  We move for mistrial

[THE COURT]:                                    It
is my understanding that the comment was made bringing your guy down or over
not mention of jail.

[DEFENSE COUNSEL]:                      No
mention of jail, Judge.

[THE COURT]:                                    Okay.  While I am distressed that the comment was
made in any form, I don’t believe it’s sufficient to raise the jury’s
inquisition about specifically jail; and based on the nature of the comment and
the way in which it was made, I will overrule your objection or motion for
mistrial.