

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00390-CR

AARON CLARK WHAM                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Aaron Clark Wham appeals his 365-day jail sentence assessed by the trial court after a jury convicted him of committing assault-family violence. In two issues, Appellant asserts that the trial court reversibly erred by allowing the State to admit extraneous bad acts evidence against him in the punishment phase when the State had not given proper notice of the acts, as required by

---

[1]See Tex. R. App. P. 47.4.

article 37.07, section 3(g) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2010). We affirm.

## II. Factual and Procedural Background

On February 4, 2009, Appellant filed a pretrial request for notice of the State's intent to introduce against him "evidence of an extraneous crime or bad act at the punishment phase of trial," pursuant to article 37.07, section 3(g). On June 16, 2009, the State notified Appellant in writing that it intended to offer evidence of "Previous Acts of Violence against [the complainant]."

On November 9, 2009, Appellant pleaded not guilty to Class A misdemeanor assault against his wife, and a jury trial ensued. Viewed in the light most favorable to the verdict,[2] the evidence reveals that in the early morning hours of January 1, 2009, Appellant and his wife, the complainant, resumed an argument they had started the night before. During the argument, the complainant stood diagonally from Appellant, who was sitting on the couch and "very intoxicated." Suddenly, Appellant stood up, reared his head back, and struck the complainant over her left eye with the top of his head. The complainant's laceration began bleeding profusely, and she drove to the hospital and received seven stitches. The jury found Appellant guilty of assault as alleged in the information.

---

[2]*See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Because Appellant does not challenge the sufficiency of the evidence, we only briefly set forth the evidence presented at trial.

Appellant elected to have the trial court assess punishment. The complainant and her mother testified for the State, and their testimony is discussed below.[3] Appellant's counsel cross-examined both witnesses but did not present a separate case-in-chief. In closing argument, Appellant's counsel emphasized that Appellant had a problem with alcohol and asked the trial court to assess some form of alcohol counseling as a condition of community supervision, or in the alternative, assess "substantially less than 365 days." The State asked the trial court to "consider the victim's safety in this and assess the maximum punishment." The trial court assessed punishment at 365 days in the county jail and sentenced Appellant accordingly.

### III. Discussion

In his first issue, Appellant asserts that the trial court erred by allowing the State to introduce extraneous bad acts evidence against him in the punishment phase when it had not given proper notice of any extraneous bad acts, as required by article 37.07, section 3(g) of the code of criminal procedure. In his second issue, Appellant asserts that the trial court's error was harmful and requires that he receive a new punishment trial.

The State does not address the sufficiency of its notice, arguing instead (1) that Appellant waived any error "on most, if not all, of the alleged errors" and (2)

---

[3]The State also introduced Appellant's prior judgments, reflecting three convictions for burglary of a motor vehicle, one conviction for criminal mischief, one conviction for burglary of a building, two convictions for delivery of a controlled substance, and one conviction for driver's duty on striking highway fixtures.

3

that, "[w]ithout conceding error as to the sufficiency of the State's notice," any error was harmless.

## A. Extraneous Offense Evidence in the Punishment Phase

Article 37.07, section 3(a) of the code of criminal procedure provides in pertinent part,

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*Id.* art. 37.07, § 3(a).  Article 37.07, section 3(g) provides:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.  If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, *notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.*[4]

*Id.* art. 37.07, § 3(g) (emphasis added).

The purpose of the notice provision is to avoid unfair surprise and to enable a defendant to prepare to answer the extraneous offense evidence.  *See Burling v. State*, 83 S.W.3d 199, 202–03 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also Wallace v. State*, 135 S.W.3d 114, 120 (Tex. App.—Tyler 2004,

---

[4]Rule 404(b) provides in relevant part that other-crimes evidence may be admissible for limited, non-character conformity purposes provided that the prosecution gives the accused reasonable notice in advance of trial of its intent to use this evidence during its case-in-chief.  Tex. R. Evid. 404(b).

no pet.). Courts have carved out exceptions to the rule so that the notice need not specify exact counties. *See Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd) (holding that section 3(g) was satisfied by State's notice listing city and state); *see also Wallace*, 135 S.W.3d at 120. Courts have also given the State leeway in specifying exact dates. *Wallace*, 135 S.W.3d at 120; *Burling*, 83 S.W.3d at 203 (holding that variation of six weeks between date alleged in notice and that presented at trial is reasonable). We review a trial court's decision to admit extraneous offense evidence for abuse of discretion. *See Sanders v. State*, 191 S.W.3d 272, 276 (Tex. App.—Waco 2006, pet. ref'd), *cert. denied*, 549 U.S. 1167 (2007); *Owens v. State*, 119 S.W.3d 439, 444 (Tex. App.—Tyler 2003, no pet.); *see also McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (applying abuse of discretion standard to a rule 404(b) notice challenge). In the absence of reasonable notice, however, a trial court abuses its discretion by admitting extraneous offense evidence. *Roethel v. State*, 80 S.W.3d 277, 283 (Tex. App.—Austin 2002, no pet.).

## B. Preservation of Error

To preserve a point for appellate review, a party must have presented to the trial court a timely objection stating the specific grounds for the ruling sought, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1); *see Berry v. State*, 233 S.W.3d 847, 856–57 (Tex. Crim. App. 2007). Further, the trial court must have ruled on the objection, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex.

Crim. App. 2004). Here, Appellant focuses on five instances in which he alleges that the trial court improperly admitted extraneous bad acts evidence. We will address each instance in turn.

### 1. Testimony of the Complainant's Mother

In this instance, the State asked the complainant's mother, Luann McCormick, "Has this been the first incident of violence against your daughter?"[5] Appellant immediately objected that he had not gotten proper 404(b) notice, and the State responded, "Our 404(b) notice included prior acts of violence against [the complainant]." Appellant's counsel replied,

> And that's true, Your Honor, but without specificity as to dates, times, possible locations, it's impossible for the Defense to prepare for such an accusation. I believe the 404(b) notice the State provided just simply said prior acts of violence against [the complainant]. It did not list a county, it did not list an offense date, or "on or about" language, or anything to put the Defense on notice.[6]

The trial court overruled the objection, and McCormick testified that Appellant took the spark plugs out of the complainant's car so she could not drive and smashed the car windows. She also testified that Appellant "would get in [the

---

[5]Appellant and the complainant had been married approximately five and a half years at the time of the November 2009 trial.

[6]Although Appellant referenced rule 404(b) rather than article 37.07, section 3(g), he discussed the substance of article 37.07, and his written notice request cited article 37.07, section 3(g). The record indicates that the trial court understood Appellant was referring to article 37.07 notice. Thus, Appellant's objection was sufficiently specific. *See Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003) (reaching similar conclusion), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005).

complainant's] face . . . it was a — a very confrontational, face-to-face-type thing." During McCormick's testimony, the trial court stated,

> [B]ecause there was an objection as to any other abuse as to [the complainant], and I didn't hear anything of that nature. So after hearing that, I'm — I'm going to sustain the Defense's objection to that and not consider the answer to that one question, because it was — anyway, I didn't hear anything. I just want to make sure the record is clear about that, and the Court has not considered any other acts of violence against [the complainant] because I didn't hear anything.

Because the trial court sustained Appellant's objection, Appellant did not obtain an adverse ruling upon which to complain on appeal. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (holding that an objection must be timely, specific, pursued to an adverse ruling, and with two exceptions, contemporaneous). Because the trial court provided Appellant with the requested relief, nothing is preserved for review.

### 2. The Complainant's Testimony

#### a. The Cruise Ship

During this exchange, the State asked the complainant, "About how soon after y'all started dating did things turn physical, in terms of any physical acts of violence against you?" Without objection, the complaint testified that she and Appellant had taken a cruise in 2004 or 2005 and that one night she found Appellant "passed out on the deck." When the complainant tried to wake Appellant, he jumped up and threw her against the wall, and she almost fell over the boat's railing. The complainant testified, "He got me cornered on the wall.

7

He was choking me. Some random guy had to pull him off of me, and eventually, the police officers on the cruise ship took him away."

Appellant asserts that because he had objected to similar testimony earlier and because trial was to the court, he did not have to repeat his objection in light of rule of evidence 103(a)(1). *See* Tex. R. Evid. 103(a)(1) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections."). Appellant cites no authority in support of his argument that rule 103(a)(1) applies to bench trials. Moreover, the trial court sustained his previous objection, and the subject matter of the complainant's testimony differed from her earlier testimony. Thus, Appellant waived any complaint on appeal by not objecting. *See Mendez*, 138 S.W.3d at 342.

### b. The Hotel

Here, the State asked the complainant when "the next physical act occurred," and she responded that one summer she and Appellant had rented adjoining hotel rooms with her sister and her sister's husband. When the complainant testified, "I heard [Appellant] talking about wanting to get some coke. And —," the following dialogue occurred:

> [Defense Counsel]: I'm going to object, Your Honor, first, to 404(b), any kind of mention of illicit drug or drug use. There's nothing in the 404(b) notice about that.

> THE COURT: Okay.

8

[Defense Counsel]: Secondly, I would renew my objection I made to the prior witness, about prior acts of violence of [the complainant] not being specifically defined or laid out in the 404(b) notice.

THE COURT: And I'll sustain the objection as to the coke, the drugs.

[State]: But the prior acts of violence are still okay to go into?

THE COURT: Yes.

. . . .

Q. [State]: [D]id y'all get into an argument?

A. [Complainant]: We got into an argument. We went back — we went back over to our room. We were arguing.

[Defense Counsel]: May I have a running objection, Your Honor, to any further acts so that I don't — if they go into any further acts, I don't want to have to keep objecting.

THE COURT: On this occasion, yes.

[Defense Counsel]: Just for this witness, Judge?

THE COURT: Yes, for this occasion.

[Defense Counsel]: But we can consider the prior ruling overruled? As to prior acts of violence, my objection to that under 404(b) was overruled?

THE COURT: Yes. Yes. Yes.

[Defense Counsel]: Thank you, Your Honor.

THE COURT: As to this one occurrence.

The complainant then testified that Appellant was not "so much physical with [her]. He tried to keep [her] from leaving the room." The complainant further testified that she eventually left the room but that when she returned, "[t]he room was a mess. There was blood on the sheets. The phone was broke. It was just

9

like a bomb went off in there." At this point, the trial court interposed, "[I] want to make the record clear from what I've just heard, I didn't hear any prior acts of violence against her, so the Court's not considering that. . . . The last incident that I just heard." Because the trial court, acting as the factfinder, specifically stated that he did not hear any evidence regarding prior acts of violence in this instance, Appellant has no complaint on appeal that the trial court abused its discretion by considering such evidence.

### c. The Neighbor's Home

In this exchange, the State asked the complainant whether Appellant had physically confronted her after the hotel incident but before the most recent offense. The complainant responded, "Yes . . . There's been two," and when the State asked the complainant to describe the first incident, defense counsel stated, "Same objection to 404(b), about lack of specificity in the notice the State provided." The trial court overruled the objection "temporarily," explaining that it would hear the evidence and then rule. The complainant proceeded to testify that she and Appellant went to a party at a friend's house in the summer of 2008, that Appellant got "very drunk," and that she had to drive him home. In the car, Appellant yelled at her and told her to let him out of the car. When Appellant opened the passenger side door, the complainant stopped, and Appellant got out of the car. Back at home, the complainant asked a neighbor to find Appellant and pick him up. When the neighbor arrived with Appellant, Appellant pushed the complainant and told her he was going to kill her. The neighbor had to pull Appellant off of the complainant.

The State asserts that Appellant failed to preserve error because he did not reurge his objection and because the trial court did not make a final ruling. *See Mendez*, 138 S.W.3d at 341. Appellant asserts that the trial court's "temporary" ruling operated as a final decision because the testimony "could not conceivably bear on whether admission of the testimony would violate the 'procedural' notice requirements of [a]rticle 37.07, section 3(g)." Appellant did not present this argument to the trial court. To the extent Appellant argues that the trial court implicitly overruled his objection, we disagree. *Cf. Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (holding that trial court's unqualified directive to "Let [the witness] answer the question" constitutes an implicit adverse ruling which preserves error). Here, the trial court specifically made a "temporary" ruling. Because Appellant did not obtain a definitive adverse ruling, he waived his complaint that the trial court abused its discretion by admitting this testimony. *See id.* (holding that an adverse ruling must be "conclusory," that is, "it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived").

### d. The Complainant's Apartment

In this instance, the State asked the complainant about an August 23, 2009 incident, which occurred after the assault for which Appellant was on trial. Following the complainant's testimony that "one night she and her children were in their apartment," the following dialogue occurred:

> [Defense Counsel]: I'm going to object again, Your Honor, under 404(b), lack of specificity about this incident.

11

THE COURT:  Okay.  It's a filed case, though.

[Defense Counsel]:  Yes, Your Honor, but the State didn't give me any notice about their intent to use it in any kind of punishment here before the Court today, or the case in chief.

THE COURT: Okay. But you knew there were prior offenses, and you knew that there was a case pending against your client.

[Defense Counsel]:  I didn't for – I will – I did know that he was arrested, bonded out, and the case was in Intake.  I didn't know it had been filed until today, Your Honor.  But I did know there was a case in the District Attorney's file.  The District Attorney had the case in their Intake Department.  I didn't know it was filed until – it was either Your Honor or the DA told me that today, that it was –  that it's been filed.

THE COURT:  But you were aware that he had been arrested and charged?

[Defense Counsel]:  I was well aware of the charges, yes, your Honor.  I was not aware of the State's intent to use that in Punishment.

THE COURT: So your client was full[y] aware of the charges against him?

[Defense Counsel]: I assume he was, yes.  I mean, he was arrested for them, so I would assume he was.

THE COURT: Okay.  I'll overrule the objection.

The complainant then testified that around 10:30 p.m. on August 23, 2009, she had been sitting outside on her second-floor balcony when she saw Appellant outside her apartment.  When the complainant went inside, she found Appellant on the first floor.  He appeared to be intoxicated, and he was mumbling

12

that he wanted to see their two children.[7]  When the complainant told Appellant to leave, he raised his hand and moved toward her.  "And the next thing I kn[e]w, I was on the ground, my tooth had come out, and I had a scratch on my chin."  The complainant testified that Appellant was gone by the time she got up, that she called the police, and that she filed charges against Appellant.

The State asserts generally that Appellant waived any error because he failed to renew his objection or request a running objection at any time during the complainant's testimony about this incident.  *See Geuder*, 115 S.W.3d at 13 (holding that an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or requests a hearing outside the jury's presence); *Ethington v. State*, 819 S.W.2d 854, 859–60 (Tex. Crim. App. 1991) (holding that appellant did not preserve error because he did not object to the witness's continued detailed testimony regarding extraneous robbery).  Appellant contends that he "lodge[d] a valid objection to *all* the testimony he deem[ed] objectionable on a given subject at one time out of the jury's presence," an option sanctioned in *Ethington,* 819 S.W.2d at 859.

The record demonstrates that the trial court and both parties understood Appellant to be objecting to the trial court's consideration of the August 2009 assault in its entirety.  *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("To avoid forfeiting a complaint on appeal, the party must 'let the trial

---

[7]At that time, the couple's divorce was pending, and the complainant had custody of their two children.  Although Appellant had visitation rights, this was not a scheduled visit.

13

judge know what he wants, why he thinks he is entitled to it, and to do clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'") (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A running objection was not needed because, as construed in context, the trial court's ruling applied globally to all testimony related to the August 2009 assault, which the complainant described succinctly. The complainant testified to background information between the objection and her description of the assault. After describing the assault, the complainant testified that she called the police and that charges were filed against Appellant. The State does not specify a point at which Appellant waived error by not reurging his objection. *Cf. Ethington*, 819 S.W.2d at 859–60 (holding that when counsel objected "only to the first question" and there were three more pages of questions and answers on the same subject, "[i]t is clear from the context of this testimony further objection was necessary in some form"). We conclude that Appellant properly preserved error in this instance. Because Appellant did not preserve error as to his complaints regarding the other bad acts evidence, the remainder of our analysis relates only to this August 2009 incident.

## C. Sufficiency of the Notice

Although the State does not directly address the sufficiency of its notice, it acknowledges in the context of the August 2009 incident that a defendant's awareness that the State filed assault charges against him is not equivalent to

14

article 37.07, section 3(g) notice.[8] *See Graves v. State*, No. 02-05-00430-CR, 2006 WL 3114451, at *3, *7 (Tex. App.—Fort Worth Nov. 2, 2006, no pet.) (mem. op., not designated for publication) (citing *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005)); *Sarringar v. State*, No. 02-02-00102-CR, 2003 WL 861698, at *4 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref'd) (mem. op., not designated for publication) ("Article 37.07, section 3(g) mandates that the State provide timely notice, not of the existence of extraneous offenses, but of its intent to offer such evidence."); *see also Loredo v. State*, 157 S.W.3d 26, 28 & n.3 (Tex. App.—Waco 2004, pet. ref'd) (holding that an open file policy cannot substitute for a request for notice of State's intent to use extraneous bad acts evidence).

The State also acknowledges that any article 37.07, section 3(g) notice regarding a pending case against Appellant was required to include the date, county, and name of the alleged victim to be considered reasonable. Because the State's notice of intent to offer evidence of "Previous Acts of Violence against [the complainant]" did not list specific acts of violence or any associated dates or counties, the State's notice was insufficient. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); *Roethel*, 80 S.W.3d at 280–81 (holding State's notice unreasonable when it stated generally that appellant committed aggravated

---

[8]The court of criminal appeals has held, however, that "under some circumstances, when delivered shortly after a defendant's request, witness statements that describe uncharged misconduct can constitute reasonable notice [under Rule 404(b)]." *McDonald*, 179 S.W.3d at 576 (citing *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001)).

15

sexual assault of his sister when she was a child); *James v. State*, 47 S.W.3d 710, 714 (Tex. App.—Texarkana 2001, no pet.) (holding that notice lacking "even a general statement about the time the acts occurred" was inadequate); *Brown v. State*, No. 02-03-00307-CR, 2004 WL 1067774, at *2 (Tex. App.—Fort Worth May 13, 2004, no pet.) (mem. op., not designated for publication) (holding that when no date is alleged in the State's notice, the notice is unreasonable).

## D. Abuse of Discretion

Article 37.07, section 3(g) does not discuss the consequences of the State's failure to provide the required notice, but "[t]he logical and proper consequence of violations of section 3(g) is that the evidence is inadmissible." *Roethel*, 80 S.W.3d at 281; *see Camacho v. State*, No. 04-06-00713-CR, 2007 WL 3270766, at *3 (Tex. App.—San Antonio Nov. 7, 2007, no pet.) (mem. op., not designated for publication) (holding that the State's notice of extraneous acts was unreasonable and that therefore admission of the evidence was error). Because the State did not provide Appellant with proper notice, the trial court abused its discretion in overruling Appellant's objection and allowing the State to introduce evidence regarding the August 2009 assault. *See Roethel*, 80 S.W.3d at 281; *James*, 47 S.W.3d at 714; *see also Brown*, 2004 WL 1067774, at *2. Accordingly, we sustain this portion of Appellant's first issue.

## E. Harm Analysis

We must next determine whether the error was harmful. "The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error."

16

*Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd); *see McDonald*, 179 S.W.3d at 578 (assessing harm for failure to give notice under rule 404(b) in accordance with rule of appellate procedure 44.2(b)); *Hernandez*, 176 S.W.3d at 825 (analyzing harm in failure to provide 404(b) notice under rule 44.2(b) and "find[ing] helpful" the article 37.07, section 3(g) test for harm set forth in *Roethel*).[9]  An appellate court may reverse a judgment of punishment based on a non-constitutional error only if that error affected the defendant's substantial rights.[10]  Tex. R. App. P. 44.2(b).

To determine harm in light of the purpose of article 37.07, section 3(g)—to avoid unfair surprise and enable the defendant to prepare to answer the extraneous misconduct evidence—we must analyze whether and how the notice deficiency affected the appellant's ability to prepare for the evidence.  *Apolinar*, 106 S.W.3d at 414; *Roethel*, 80 S.W.3d at 281–82; *Graves*, 2006 WL 3114451, at *5.  Specifically, we examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial.  *Roethel*, 80 S.W.3d at 282.  In determining the latter, we will

---

[9]The court of criminal appeals's reasoning is applicable here because rule 404(b) is incorporated by reference into the provisions of article 37.07, section 3(g) of the code of criminal procedure.  *See Gonzalez*, 337 S.W.3d at 485 (applying harm standard articulated in *Hernandez* to analyze harm under article 37.07, § 3(g)).

[10]"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Gonzalez*, 337 S.W.3d at 485.

look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence.[11]  *Id.*  "A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the extraneous-offense evidence."[12]  *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd) (discussing rule 404(b) notice and citing *Hernandez*, 176 S.W.3d at 826).  Error in admitting evidence in violation of a notice requirement does not have an "injurious" effect on the verdict if the defendant was not surprised by the evidence.  *Hernandez*, 176 S.W.3d at 825 (holding that evidence admitted in violation of rule of evidence 404(b)'s notice requirement is not harmful error if defendant not surprised by evidence); *Roethel*, 80 S.W.3d at 281–82.

In his opening brief, Appellant asserts that the trial court's punishment decision was "substantially swayed" by the "erroneous admission into evidence, and subsequent consideration of, the testimony elicited by the State concerning Defendant's alleged commission of extraneous acts of violence against [the complainant]."  *See Kotteakos*, 328 U.S. at 765 ("[I]f one cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error, it is

---

[11]Appellant does not assert that the State acted in bad faith, and our harm analysis is not based on that component of the *Roethel* test.

[12]As Appellant points out, however, the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either party.  *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Umoja v. State*, 965 S.W.2d 3, 11–12 (Tex. App.—Fort Worth 1997, no pet.).

18

impossible to conclude that substantial rights were not affected.").   In support, Appellant cites to the trial court's statements at sentencing:

> Looking over the criminal history that I've been given here, you – you have – you had some serious issues here at the start of this century.   Three convictions for violation – or burglary of a vehicle, one for criminal mischief, a felony for burglary, and two felonies for delivery of a controlled substance.   Then you came back in, in '07, with the striking an unattended vehicle offense.   You were placed on probation there, and then I heard that revocation in August.   And then after that is when you're accused of an additional assault against this same victim in this case.   There's some serious issues here in my mind.   Looks like there's some alcohol issues. . . . [S]entence of 365 days.

As a sister court has explained, however, "focusing on the degree of prejudice created by the erroneous admission of the evidence is a different harm analysis employed for violations of the rules of evidence concerning relevancy, and is not appropriate here where our inquiry is limited to the harm caused by the State's inadequate notice."  *Camacho*, 2007 WL 3270766, at \*4 (citing *Hernandez,* 176 S.W.3d at 824–25); *see Roethel*, 80 S.W.3d at 281–82 (explaining same); *Graves*, 2006 WL 3114451, at \*5–6.  Thus, we do not consider the trial court's comments in assessing harm in this instance.

In his reply brief, Appellant asserts that "[g]iven the nature of virtually all of the testimony erroneously admitted by the Trial Court, Defense counsel would have had no way of 'knowing' whether the State knew about these alleged events, much less whether the State knew about them and intended to introduce testimony concerning them into evidence."   As to the August 2009 assault, however, the record demonstrates otherwise.

19

On September 25, 2009, Appellant filed a motion for continuance asking that his October 2, 2009 trial setting be continued to a later date and explaining that

> Defendant was arrested for the offense of *Assault Causes Bodily Injury/Family Violence* on or about September 24, 2009. In the interest of justice, Attorney respectfully requests additional time to prepare to defend against the new allegations in a potential punishment phase at trial.[13]

The trial court granted Appellant's motion, and trial began on November 9, 2009. When the State introduced evidence of the August 2009 assault, Appellant's counsel explained to the trial court that he was "well aware of the charges" but that he was "not aware of the State's intent to use that in Punishment."

It "strains credulity," however, to think that Appellant was surprised by the substance of the complainant's testimony or that the lack of formal notice affected his ability to prepare for cross-examination, defend against her testimony, or to present mitigating evidence. *See Hernandez*, 176 S.W.3d at 826 (holding that "it strains credulity" to think that the defendant "was not on notice that the State intended to use his six recorded statements as part of its evidence or that he had not prepared to defend against their use."). Although Appellant asserts that, had he been provided notice, "he would have been enabled to investigate, and to acquire rebuttal witnesses (other than Defendant)," trial court documents demonstrate that, as to the August 2009 incident, Appellant requested (and was granted) a continuance of approximately one month for

---

[13]This motion was filed approximately three months after the State had filed its article 37.07, section 3(g) notice.

these purposes. That Appellant was not surprised by the substance of the complainant's testimony is further supported by the fact that Appellant did not request a continuance or even a short recess to prepare for cross-examination. *Cf. Graves*, 2006 WL 3114451, at *6, *7 n.15 (concluding that Graves was harmed by insufficient extraneous offense notice in part because counsel specifically requested that his cross-examination of the witness be postponed until he had obtained his notes and files); *see McDonald*, 179 S.W.3d at 578 (concluding in part that no harm resulted from lack of notice because if defendant had been legitimately surprised, he could have requested a continuance). Although Appellant did not cross-examine the complainant about the August 2009 assault, this seems to have been consistent with his apparent trial strategy in the punishment phase to blame his actions to a large extent on his issues with alcohol. In closing argument, Appellant asked to be placed on community supervision, stating that "if anything, I think everybody agreed that alcohol has been a problem in this marriage" and that alcoholism "is something this Court routinely curtails in people through the use of probation and terms and conditions of said probation." It is difficult to imagine, and Appellant does not explain, how his defense strategy might have been different had the State formally notified him that it intended to offer the August 2009 extraneous bad act during punishment. Thus, we conclude that the error in admitting the extraneous bad acts evidence without sufficient article 37.07, section 3(g) notice was harmless, and we overrule Appellant's second issue. *See* Tex. R. App. P. 44.2(b).

21

## IV. Conclusion

Having sustained Appellant's first issue in part but having overruled his second issue, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 22, 2011