

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1000-20

### SANTHY INTHALANGSY, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

McClure, J., delivered the opinion of the Court in which Keller, P.J., Richardson, Yeary, Newell, Keel, Walker, and Slaughter, JJ., joined. Hervey, J. did not participate.

### O P I N I O N

Sara Cassandra Nelson ("Cassie") witnessed her boyfriend, Kris Maneerut ("Jimmy"), being shot. Immediately afterward, Appellant Santhy Inthalangsy and associates escorted her from the crime scene. Later that day, she was killed. Appellant was charged with capital murder of Jimmy while in the course of kidnapping Cassie. Was evidence of Cassie's death admissible for a

proper purpose and sufficiently relevant to the charge of capital murder? We hold that the evidence was relevant, tended to prove an element of the charged offense, and provided necessary context for the charged offense. Furthermore, we hold that the probative value of the evidence was not substantially outweighed by its prejudicial effect. Therefore, the trial court did not abuse its discretion in admitting the evidence.

## BACKGROUND

Cassie Nelson panicked when drug profits worth $70,000 were stolen. Appellant's girlfriend Lindapone Phanprasa ("Linda"), the drug dealer, held Cassie responsible. On May 1–2, 2015,[1] Linda and Appellant held Cassie captive at Linda's house. Cassie texted her landlord, "un [sic] being held hostage . . .," "huge deal gone bad," and "I need to help find the 70,000 that was stolen. I like my face." Later, she texted to him the address where she was being held, which was Linda's house. Cassie offered to give Linda and Appellant her father's speed boat as compensation, and they released her the next day.

A few days later, on May 6, Cassie was evicted from her apartment for nonpayment of rent. Around 10 a.m., she and her boyfriend Jimmy, an auto mechanic, drove to the home of their friend Frank Garza. At first, they slept in their cars, but later Frank invited them inside.

Meanwhile, Linda was unable to transfer title to the boat to herself, so she and her associates went looking for Cassie. On May 6, at about 4 p.m., three Asian men came to Cassie's former apartment asking for her. When her landlord said she wasn't there, they left with her TV. The landlord testified that he saw a man cock a gun in the car as they drove off. Late that night, two men and a woman asked for Cassie at her mother's house. They spoke Thai. A fourth person

---

[1] All events pertaining to the offense occurred in 2015 unless otherwise noted.

waited by the car outside the fence. Cassie's mother later identified two of the people as Linda and Appellant.

Syla Sengchareun ("Monk") lived in the same neighborhood as Jimmy and Frank and had gone to school with Jimmy. Linda asked Monk several times about Cassie's whereabouts. She said she wanted to speak to Cassie and Jimmy about money. On May 7, Monk phoned Frank and asked if Cassie and Jimmy were at his house. Frank said yes. Monk told Frank that somebody was coming to talk to Cassie and that he must not alert her. Monk immediately called Linda to report the news. Appellant, Linda, and a man named Amalinh Phouthavong drove to Monk's house, and Monk led them to Frank's house.

When both cars arrived, Frank walked out of his house and sat in Monk's car to buy some Xanax. Appellant and Amalinh got out of Linda's car and opened the trunk. Watching from his car, Monk saw one of the men put something behind his shirt, and Monk thought it was a gun. Appellant and Amalinh walked into Frank's house. About a minute later, Frank heard a sound resembling a gunshot or a screen door slamming. Appellant and Amalinh walked out of the house with Cassie between them. Monk observed that Cassie "looked like she was fixing to cry"—Frank described her as appearing "confused." Appellant and Amalinh were seated in the back seat of the car on either side of Cassie as they drove off.

Frank walked into his house and saw Jimmy lying on the floor, gasping for breath, and bleeding from a large hole in his face. Paramedics transported him by helicopter to a hospital, where he was pronounced dead shortly after arrival.

Early the next morning, a fisherman found Cassie's body in a damp, wooded area near the San Jacinto River. She had eight or nine gunshot wounds to the head, neck, chest, back, and left

wrist. An assistant medical examiner estimated that she had died twelve to twenty-four hours before her body was discovered, the same day as Jimmy's death.

A grand jury indicted Appellant for capital murder for shooting Jimmy while in the course of kidnapping Cassie.[2] Appellant pleaded not guilty. Before the trial, defense counsel moved the court to order the State to refrain from mentioning Cassie's death or introducing any evidence of her death. The State said it planned to use the evidence to prove the element of deadly force and the defendant's intent to kill Jimmy. The judge denied the motion, saying, "I think these are part of the operative fact of the offense." During the trial, the State presented evidence of Cassie's death, including a photograph of the lower portion of her body lying in the brush and testimony about her bullet wounds. The defense made timely objections. The jury found Appellant guilty of capital murder and assessed a sentence of life imprisonment without parole.

## DIRECT APPEAL

In his appeal, Appellant cited five points of error:

1. Erroneous admission of hearsay statements by Cassie;

2. Erroneous admission of evidence of Cassie's murder;

3. Finding that the probative value of Cassie's murder was not substantially outweighed by a danger of unfair prejudice;

4. Denial of his motion for continuance to investigate possible exculpatory and mitigating evidence disclosed mid-trial; and

5. Insufficient evidence that a murder was committed in the course of a kidnapping.

---

[2] The indictment alleged: "the Defendant . . . on or about MAY 7, 2015, did then and there unlawfully, while in the course of committing and attempting to commit the KIDNAPPING of SARA NELSON, intentionally cause the death of KRIS MANEERUT by SHOOTING KRIS MANEERUT WITH A DEADLY WEAPON, NAMELY A FIREARM."

The Fourteenth Court of Appeals did not reach the issues of Cassie's alleged hearsay statements or the motion for continuance. *Inthalangsy v. State*, 610 S.W.3d 138, 142 (Tex. App.—Houston [14th Dist.] 2020). The court held that the evidence was legally sufficient for conviction but that the trial court abused its discretion by admitting evidence of Cassie's murder. *Id*. A majority of the court concluded that Cassie's murder "had no logical tendency to make a fact of consequence concerning her kidnapping more or less probable" because there was insufficient evidence connecting Appellant to her death. *Id*. at 146. The opinion of the court found that because Cassie's death was violent, reference to it caused prejudice that substantially outweighed its probative value under Texas Rule of Evidence 403. *Id.* The court was unable to assess the impact the evidence had on the jury and concluded that such uncertainty rendered the error harmful. *Id*. at 148. The court determined that the error impacted Appellant's substantial rights and consequently reversed the trial court's judgment and remanded for a new trial. *Id*. at 142.

Writing in dissent, Justice Christopher asserted that the majority "achieves [its] holding by not crediting the reasonable inferences that may be drawn from the circumstantial evidence," contravening the abuse-of-discretion standard of review. *Id*. at 149. She reasoned that evidence of Cassie's murder was admissible under Texas Rule of Evidence 404(b) on several possible grounds including (1) same-transaction contextual evidence and (2) evidence tending to prove elements of the charged offense (that Appellant restrained Cassie without her consent or prevented her liberation by use of deadly force). *Id*. at 149. On these grounds and others, Justice Christopher concluded that the trial court could have reasonably credited the evidence with a high probative value and low risk of unfair prejudice, and she found no abuse of discretion. *Id*. at 150–51.

## STATE'S PETITION AND APPELLANT'S REPLY

Echoing Justice Christopher's dissent, the State petitioned this Court on three grounds: (1) the court below misapplied Texas Rules of Evidence 401 and 402 by disregarding evidence connecting Appellant to Cassie's murder, showing insufficient deference to the trial court; (2) the lower court failed to consider whether evidence of Cassie's murder was admissible for non-character-conformity purposes under Rule 404(b)(2); and (3) the court below failed to conduct a meaningful assessment of the balance of probative value and prejudice under Rule 403.

In reply, Appellant argues alternatively that evidence of his involvement in Cassie's murder was "speculative at best" and that there was "no evidence" of his involvement. He says that Cassie's kidnapping and murder are not sufficiently intertwined to serve as same-transaction contextual evidence. Then he asserts that evidence of her murder fails the Rule 403 balancing test under *Montgomery v. State*, 810 S.W. 2d 372 (Tex. Crim. App. 1990) (op. on reh'g). Applying the four *Montgomery* factors, he cites the evidence's potential to impact the jury's emotions and distract from the charged offenses and the amount of time the State spent developing the evidence of her murder.

## ANALYSIS

### 1. Standard of review

An appellate court reviews a trial judge's determination on admissibility of evidence for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery*, 810 S.W.2d at 391). Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the "zone of reasonable disagreement." *Id*.

### 2. Relevance

In response to the State's first point of error, we hold that the court of appeals failed to give proper deference to the trial court's ruling and erred in concluding that the evidence of Cassie's death was irrelevant to the charged offense under Rules 401 and 402.

A trial court may not admit irrelevant evidence. Tex. R. Evid. 402. Evidence is relevant if it tends to make a fact "of consequence in determining the action" more or less probable than it would be otherwise. Tex. R. Evid. 401. There must be a "direct or logical connection" between the evidence and the fact the proponent is trying to prove. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). Circumstantial evidence is as probative of guilt as direct evidence. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Pieces of evidence that may seem weak in isolation become stronger when they are consistent with one another. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). The relevance of evidence is not always clear cut, and reasonable people may disagree about whether certain evidence leads to a particular inference. *Montgomery*, 810 S.W.2d at 391. If the relevance of evidence depends on the existence of another fact, then the court may admit the evidence contingent upon the introduction of sufficient evidence to prove that fact. Tex. R. Evid. 104(b).

With evidence of Cassie's death, the State sought to prove that Appellant kidnapped Cassie. By charging Appellant with the kidnapping of Cassie, the State was required to prove that she had been abducted. One way in which abduction can be proven is to demonstrate that the victim is restrained with the intent to prevent liberation by using or threatening deadly force. Tex. Penal Code §§ 20.01(2)(B), 20.03(a).[3] Shooting Cassie to death constitutes deadly force and necessarily establishes Cassie's lack of consent to her restraint and Appellant's intent to prevent her liberation by using deadly force. In this way, there is a logical connection between the violent death of Cassie

---

[3] A person may also commit kidnapping by secreting or holding another person in a place where she is not likely to be found, with intent to prevent her liberation. Tex. Penal Code §§ 20.01(2)(A), 20.03(a).

and the kidnapping charge. Thus, the fact that Cassie was killed is a fact of consequence in the action.

Still, the relevance of Cassie's death to the charged offense depends on whether sufficient evidence exists to prove that Appellant is responsible for her death. The State introduced extensive circumstantial evidence supporting Appellant's culpability for Cassie's death including:

- Appellant and his girlfriend Linda kidnapped Cassie twice within a week prior to her death.

- Linda held Cassie responsible for the theft of $70,000.

- Cassie feared that someone would hurt her if she didn't find the money.

- After releasing Cassie from the first kidnapping, Appellant went to look for her at her parents' house.

- The day before the murders of Cassie and Jimmy, three Asian men, one of whom held a gun, looked for Cassie and Jimmy at Cassie's apartment.

- Cassie witnessed Appellant or Amalinh shooting her boyfriend Jimmy.

- After the shooting, Cassie walked out of the house, flanked by Appellant and Amalinh, looking "nervous" and "fixing to cry."

- No one testified to seeing Cassie alive again after she left with Appellant, Amalinh, and Linda.

- Cassie was killed the same day as Jimmy.

- Both Jimmy and Cassie were shot in the face, though with different guns.

The court of appeals held that a reasonable jury could have found, based on the evidence above, that Appellant intended to kidnap Cassie. *Inthalangsy*, 610 S.W.3d at 143. Whether this circumstantial evidence is sufficient to support the further inference that Appellant used deadly force to restrain Cassie, thereby causing her death, is within the zone of reasonable disagreement. *See Powell*, 63 S.W.3d at 438. Therefore, the trial court did not abuse its discretion in admitting the evidence.

3. **Grounds for admitting the evidence**

The court of appeals erred by failing to recognize that the evidence of Cassie's death was admissible for at least one of two proper purposes: as evidence of an element of the charged offense and as same-transaction contextual evidence.[4]

### 3.1.    Proving an element of the offense

Though Appellant characterized Cassie's death as an extraneous offense, the trial judge correctly recognized it as part of the offense and not extraneous. In *Ramirez v. State*, a defendant charged with murder in the course of burglary objected to the admission of the victim's dying statement, "They raped me." 815 S.W.2d 636, 641 (Tex. Crim. App. 1991). The indictment did not specifically allege which kind of burglarious intent Ramirez had when he killed the victim. *Id*. at 640, 642. Ramirez admitted that he and a friend stole two televisions from the victim's apartment*. Id*. at 641. But he argued that rape was an extraneous offense that the State could not prove beyond a reasonable doubt and that the State had overwhelming evidence for conviction without the statement. *Id*. at 642. This Court held that "the evidence of the sexual assault is part of the State's proof on the aggravating feature of this capital murder." *Id*. The sexual assault was a material issue and not extraneous. *Id*. The fact that Ramirez had admitted to theft did not constrain the State to proving only the defendant's theory of how the capital murder was committed. *Id*. at 642–43.

Similarly, in this case, the State introduced evidence of Cassie's death to prove the aggravating feature of a capital murder—kidnapping. The indictment did not allege that Appellant kidnapped Cassie in a particular way, so the State was not constrained in its proof. "The offense of kidnapping is complete when the restraint is accomplished and there is evidence that the

---

[4] The State also argues that the evidence was admissible to show Appellant's intent to use deadly force against Cassie to prevent her liberation. The other bases are sufficient to support admissibility of the evidence, and we do not address that argument today.

defendant intended to restrain the victim by either secretion or the use or threat to use deadly force." *Swearingen*, 101 S.W.3d at 95.

The court of appeals did not engage with this argument and instead continued to analyze Cassie's murder only as an extraneous offense. *Id.* at 144. The court of appeals implied that because Frank's testimony describing the events at his house on May 7 provided legally sufficient proof of kidnapping, it was an abuse of discretion to allow more evidence of kidnapping. *Inthalangsy*, 610 S.W.3d at 146. This Court rejected that reasoning in *Ramirez*. While the offense of kidnapping may have been complete when Cassie left Frank's house, the trial court did not err by allowing the State to present evidence of multiple ways the offense may have been committed. Here, the evidence shows that Appellant and associates kidnapped Cassie by restraining her in two ways: by secreting her and by using deadly force. The offense of kidnapping may have begun at Frank's house, but it did not end there. It ended only when Cassie was killed because, at that point, it was no longer possible to liberate her.

### 3.2.    Extraneous but admissible as same-transaction contextual evidence

Even if evidence of Cassie's death were not relevant to prove an element of the offense, it would be relevant as same-transaction contextual evidence.

Evidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes. Tex. R. Evid. 404(b). These purposes include proving intent and motive as well as illustrating other aspects of an "indivisible criminal transaction," also known as same-transaction contextual evidence. *Id.*; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Same-transaction contextual evidence "illuminate[s] the nature of the crime alleged." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). A jury is entitled to know all the facts that are "blended or

closely interwoven" with a continuous criminal episode. *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Yet, such same-transaction contextual evidence must be "necessary to the jury's understanding of the offense" such that the charged offense would make little sense without the same-transaction evidence. *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996).

In *Devoe v. State*, the defendant was charged with capital murder of two girls in Jonestown. 354 S.W.3d 457, 461, 463 (Tex. Crim. App. 2011). At trial, the State introduced evidence of several additional crimes that together painted a picture of a three-day crime spree spread across multiple towns in central Texas, extending to Pennsylvania, and ending in New York. *Id.* at 462–66. Devoe argued that it was error to admit evidence that he stole a gun from his friend, assaulted his employer-landlady in Llano, shot and killed a bartender in Marble Falls, and robbed an elderly woman in Pennsylvania. *Id.* at 469. These events occurred before and after the shooting deaths of the girls. *Id.* at 462–66. The trial court found that leaving out these facts created "a gaping hole" in the State's case. *Id.* at 470. The extraneous-offense evidence showed Devoe's pattern of targeting women he knew personally, including former girlfriends, how he acquired the murder weapon and two vehicles used in the crimes, and his flight from the crime scenes. *Id.* The court found that the offenses comprised one continuous course of conduct and that it was within the zone of reasonable disagreement to find the offenses to be contextual. *Id.* This Court affirmed that judgment. *Id.* at 476.

The standard for admission of extraneous-offense evidence is high: "a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense." *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008) (citing *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994) (op. on rehearing)). In *Harrell*, this Court declined to apply the preponderance standard to the admission

of extraneous-offense evidence under Texas Rules of Evidence 104(b) and 404(b), in contrast with U.S. Supreme Court precedent.[5] 884 S.W.2d at 160. For decades, Texas courts had instructed juries not to consider extraneous offenses unless they believed beyond a reasonable doubt that the defendants were responsible for those offenses. *Id*. at 157. In accordance with that practice, even after adoption of the Texas Rule of Evidence 104(b), which is identical to the federal rule, Texas would continue to use the higher standard for admission of extraneous-offense evidence. *Id.* at 158. Looking back to assess the sufficiency of the evidence under this standard, an appellate court asks whether "a rational jury would have *necessarily* entertained a reasonable doubt" about the defendant's responsibility for the extraneous offense. *Swearingen*, 101 S.W.3d at 96.

Applying the proper deferential standard of review to this case, it is within the zone of reasonable disagreement to find both that (1) evidence of Cassie's death provides necessary context to a continuing course of conduct including capital murder and (2) Appellant was responsible for her death beyond a reasonable doubt. One cannot tell the story of Cassie's kidnapping without revealing the end of the story. A juror would naturally wonder what happened to Cassie after she left Frank's house and why she did not testify about what happened to her on May 7. The evidence shows that Cassie was worried about her personal safety. She texted to her landlord that she was being held hostage and needed to find $70,000 soon because "I like my face." She told him that to save her life, she offered to convey her father's speed boat, which she neither owned nor possessed. She said she was scared to involve anyone other than Jimmy. From this text exchange, the landlord observed that her state of mind was "panicky and frazzled." A few days

---

[5] In *Huddleston v. United States,* the Supreme Court held that the Federal Rules of Evidence allow a court to admit relevant evidence of similar acts if it concluded that a jury could find by a preponderance of the evidence that the defendant committed the acts. 485 U.S. 681, 690 (1988). No preliminary finding was necessary under Federal Rule of Evidence 104(a); the evidence could be admitted later in trial. *Id*. at 689–90.

later, when she left the scene of Jimmy's murder, witnesses observed that she looked nervous and about to cry.

Putting the evidence together illuminates the nature of the crime—that Appellant and associates killed Jimmy because he interfered with a plan to shake down Cassie for the missing funds or retaliate against her. If Cassie had later turned up alive and unharmed, perhaps a different inference would have been drawn. The fact that Cassie was killed the same day as Jimmy told the jury more about how the charged offense of kidnapping was accomplished. It is consistent with other facts in evidence. Shooting Cassie to death resolved the "debt" she owed to Linda. No evidence contradicts that theory of events. In addition, as discussed earlier, substantial circumstantial evidence supports Appellant's culpability for her death. It is hard to see how a jury would necessarily have held a reasonable doubt.

## 4. Balancing probative value and prejudice

The court of appeals did not give the proper deference to the trial court's ruling and erred by concluding that the evidence of Cassie's death was substantially more prejudicial than probative.

Even when evidence is relevant, a court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 640–42 (Tex. Crim. App. 2006). Before excluding evidence, a court must assess the balance of factors in Rule 403 including:

- how compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence—in other words, its inherent probativeness . . .
- the potential the 'other crimes, wrongs, or acts' have to impress the jury in some irrational but nevertheless indelible way . . .

- how much trial time . . . the proponent need[s] to develop evidence of the extraneous misconduct, such that the attention of the factfinder will be diverted from the indicted offense . . .

- how great . . . the proponent's '*need*' [is] for the extraneous transaction.

*Montgomery*, 810 S.W.2d at 389–90.

The fact that an item of evidence shows the defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds: "Almost all evidence offered by the prosecution will be prejudicial to the defendant. Only evidence that is *unfairly* prejudicial should be excluded." *DeLeon v. State*, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref'd). Unfair prejudice is the "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 389. If the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, the court should admit the evidence. *Id.*

Applying and balancing the factors of Rule 403 to the facts of this case:

- *Probative value*—As discussed above, the evidence of Cassie's death tends to make it more probable that Appellant restrained her without her consent and used deadly force in the process, which are elements of the charged offense. Substantial circumstantial evidence supports the inference that Appellant was responsible for her death. This factor weighs heavily in favor of admission.

- *Unfair prejudice*—There is a slight risk that the jury would be confused that Appellant was on trial for murdering Cassie instead of Jimmy. However, it is unlikely that any such confusion would have had an irrational effect on the jury or led the jury to make its decision on an improper basis. Other evidence strongly supported a finding that Appellant and Amalinh cooperated to murder Jimmy, who was the murder victim listed

on the indictment.[6] Appellant's appeal challenged the evidence for kidnapping, and that is an issue to which Cassie's death is directly related because of the deadly-force element. While evidence of Cassie's death may have had a slight emotional impact on the jury, there is no reason to think it outweighed the emotional impact of evidence proving Jimmy's death. Jimmy was a sympathetic victim in his own right because he seemed to be an innocent bystander protecting his girlfriend from harm. The State showed the jury a disturbing photograph of Jimmy's face with a bullet wound and one eye half-open. The State introduced only one photograph of Cassie's corpse, and it is not inflammatory; it shows the lower portion of her body lying in the brush, and no wounds are visible. This factor weighs slightly in favor of admission.

- *Amount of trial time consumed*—The State did not spend an inordinate amount of time on evidence of Cassie's death. The State called a total of sixteen witnesses. The number of witnesses who testified partially or exclusively about Cassie's death was four. They described the location where her body was found, her gunshot wounds, and the forensic evidence collected from her body. In the transcript of the State's closing argument, discussion of Cassie's death comprises two paragraphs out of the twenty-page argument. The great majority of the testimony and argument concerned the events leading up to May 7, the murder of Jimmy, and the abduction of Cassie at Frank's house. At the hearing for the motion in limine, the State agreed to limit the number of photos and drawings of her corpse and exclude any photos of her face and the more

---

[6] Frank Garza saw Appellant or Amalinh take something from the trunk and put it behind his shirt. Then Appellant and Amalinh entered Frank's house, and Frank heard a sound like a gunshot or a door slamming. Appellant and Amalinh walked out of the house with Cassie. All of this happened in about a minute. After Appellant and associates drove off with Cassie, Frank entered his house and saw Jimmy bleeding from a hole in his face and gasping for breath. Jimmy was pronounced dead at the hospital.

gruesome images. Accordingly, the State only showed the jury seven photographs of the scene where Cassie's body was found, including one photograph of Cassie's body. By comparison, the State showed to the jury approximately 100 photos of the crime scene for Jimmy's murder and Cassie's abduction, including a photo of Jimmy's face after death. This factor weighs in favor of admission.

- *State's need*—The State's need for the evidence was moderate. The court of appeals held that the evidence was sufficient for kidnapping without the evidence of Cassie's murder. However, without an eyewitness testifying to actual physical restraint, threats, or secretion of Cassie, a finding of guilt for kidnapping depended on a logical inference from the circumstances—namely Cassie's drug debt and prior kidnapping, her facial expression when walking out of Frank's house, and the fact that she had just witnessed her boyfriend being shot. One could see how the State would want to strengthen its case of kidnapping by showing that Cassie's abductors used deadly force against her. The evidence was not cumulative of other evidence presented because it showed a different way of committing the offense of kidnapping. This factor weighs in favor of admission.

On balance, the court of appeals erred by finding that the probative value of the evidence of Cassie's death was substantially outweighed by the risk of unfair prejudice.

**CONCLUSION**

The trial judge did not err by finding that evidence that Cassie was murdered was relevant to the charge of capital murder in the course of kidnapping. It was within the zone of reasonable disagreement for the court to find that the evidence was admissible either as proof of an element

of the offense or as an extraneous offense illustrating the context in which the charged offense occurred. We reverse the judgment of the court of appeals and remand the case to that court to address Appellant's remaining points of error regarding Cassie's alleged hearsay statements and the motion for continuance.

Delivered: November 10, 2021
Publish